**MOHAWK AIRLINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

No. 17986.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 6, 1964.

Decided Feb. 20, 1964.

Mr. Calvin Davison, Washington, D. C., with whom Messrs. James F. Bell and James E. Merritt, Washington, D. C., were on the brief, for petitioner.

Mr. Frederic D. Houghteling, Attorney, Civil Aeronautics Board, with whom Asst. Atty. Gen. William H. Orrick, Jr., Messrs. John H. Wanner, General Counsel, Joseph B. Goldman, Deputy General Counsel, O. D. Ozment, Associate General Counsel, Litigation and Legislation, Civil Aeronautics Board, and Lionel Kestenbaum, Attorney, Department of Justice, were on the brief, for respondent.

Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.

PER CURIAM.

On March 24, 1954, the Civil Aeronautics Board established a rate to be paid Mohawk Airlines for the transporta-

896

tion of mail on and after August 7, 1953, including the payment of subsidies. Periodical payments for such transportation were thereafter made, subject to adjustment after audits.

Mohawk's computation of its subsidy mail pay for the period from October 1, 1953, to June 30, 1955, was challenged by the Board after an audit revealed the fact that Mohawk had included in its flight mileage for the period, as "extra sections" within the meaning of the original order, flights made by planes which carried no passengers. The Board said such planes were not extra sections of scheduled flights, but were simply being moved into positions where they might be needed.

After protracted correspondence, the Board wrote a letter to Mohawk on May 15, 1963, in which it said, *inter alia:*

"* * * [T]he Board has determined to disallow those claimed extra section miles on which no passengers were carried in the computation of Mohawk's subsidy * * *. Accordingly, we intend to make an off-set of $18,204.16 against your next regular monthly subsidy payment."

Consequently, Mohawk's subsidy payment for April, 1963, made May 28, 1963, was reduced by the sum of $18,204.16.

Allegedly proceeding as authorized by Section 1006 of the Federal Aviation Act of 1958, 72 Stat. 795, 49 U.S.C. § 1486, and Section 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C. § 1009, Mohawk on July 15, 1963, filed with us a petition for review of the Board's letter of May 15, 1963, denominating it an order from which it had suffered a legal wrong and by which it was adversely affected and aggrieved.

On September 6, 1963, the Board moved to dismiss the petition for review on the ground that its letter of May 15, 1963, was not an "order" reviewable under Section 1006 of the Federal Aviation Act of 1958, and on the further ground that Section 10 of the Administrative Procedure Act does not give this court jurisdiction and that Mohawk had an adequate remedy in the Court of Claims. By an order entered October 10, 1963, we denied the Board's motion to dismiss, "without prejudice to a renewal thereof in its brief on the merits of this appeal." Having been renewed as thus permitted, the Board's motion to dismiss the petition for review is again before us and presents a threshold question.

The first inquiry is whether the letter of May 15, 1963, was an order of the Board within the meaning of Section 1006 of the Federal Aviation Act. In the first place, it did not purport to be an order; it was by its terms merely a declaration of intent to construe the 1954 mail rate order in a manner which would require the determination that the United States had made an overpayment for mail transportation, and the consequent deduction of the overpayment from any amount subsequently found to be due the carrier.[1] In the second place, the letter—if it can properly be called an order—was not issued by the Board under the Federal Aviation Act, and so was not made reviewable by Section 1006 thereof.[2]

■■ It seems clear that the Board performs two separate and distinct functions with respect to payment for the air transportation of United States mail: (a) as authorized by the Federal Aviation Act, it fixes mail rates by orders, entered after notice and hearing, which are reviewable under Section 1006; (b)

1. This was in obedience to Section 322 of the Transportation Act of 1940, 54 Stat. 955, 49 U.S.C. § 66, which reserved to the United States Government the right to deduct the amount of any overpayment for the transportation of mail from any amount subsequently found to be due the carrier who had received the overpayment. The three-year limitation imposed by the 1958 amendment is inapplicable here.

2. Section 1006 provides that "Any order * * * issued by the Board * * * *under this Act* * * * shall be subject to review * * *." (Emphasis supplied.)

as authorized by the Transportation Act, it first pays carriers' claims as presented, then audits them and deducts any overpayments disclosed by the audits from amounts subsequently found to be due to the carriers involved. The second function is not performed by order subject to review, but by interpretation of the mail pay orders theretofore entered. We think the letter of May 15, 1963, was not an order of the Board in any sense; certainly it was not an order issued by the Board under the Federal Aviation Act, but rather was a statement of intention to act under Section 322 of the Transportation Act. So, even if the letter could be regarded as an order under the latter Act, it was not reviewable under Section 1006 of the Federal Aviation Act.

We turn to consider whether Section 10 of the Administrative Procedure Act authorizes review of the Board's letter. That section includes the following (5 U.S.C. § 1009(c)):

> "Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review.
> * * * *"

We have already seen that the letter of May 15, 1963, was not made reviewable by Section 1006, the statute relied on by Mohawk as making it so.

As to the second segment of the foregoing quotation from Section 10 of the Administrative Procedure Act, we note that the letter, even if it be regarded as "agency action," was not "final agency action." It had no effect until the offset was actually made on May 28, 1963. Moreover, if the letter be construed as an order that the offset be made (pursuant to which the deduction of the overpayments was purely ministerial) the letter was not "agency action for which there is no other adequate remedy in any court," for there was clearly an adequate remedy in the Court of Claims. 28 U.S.C. § 1491.

This is so because, if the Board's determination stated in its letter and its subsequent deduction of the alleged overpayments were improper, Mohawk was entitled to the disputed sum under the terms of the 1954 mail rate order, and could have maintained an action in the Court of Claims to recover the money as having been wrongfully withheld. Such an action would not have asked the Court of Claims to review the 1954 order fixing mail rates,[3] but only to determine whether part of the mail pay fixed by that order had been improperly withheld by the Board, in which event the Court of Claims would have had the power to enter judgment for the amount withheld.

To summarize, we conclude that (1) the Board's letter of May 15, 1963, was not an order reviewable under Section 1006 of the Federal Aviation Act of 1958, but merely a statement of the Board's interpretation of a disputed term in its 1954 mail rate order, which in and of itself had no effect; (2) Mohawk had an adequate remedy in the Court of Claims. It follows that the petition for review must be dismissed.

It is so ordered.

---

3. The Court of Claims cannot review an order of that nature. United States v. Jones, 336 U.S. 641, 649, 69 S.Ct. 787, 93 L.Ed. 938 (1949).