**NORTH CENTRAL AIRLINES, INC.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent.

No. 19209.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 5, 1965.

Decided Feb. 15, 1966.

Mr. Raymond J. Rasenberger, Washington, D. C., for petitioner.

Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Legislation, Civil Aeronautics Board, with whom Asst. Atty. Gen. Lyle M. Turner, Mr. John H. Wanner, Gen. Counsel, Mr. Joseph B. Goldman, Deputy Gen. Counsel, and Mr. Frederic D. Houghteling, Atty., Civil Aeronautics Board, and Mr. Lionel Kestenbaum, Atty., Dept. of Justice, were on the brief, for respondent.

Before PRETTYMAN, Senior Circuit Judge, and BURGER and LEVENTHAL, Circuit Judges.

PRETTYMAN, Senior Circuit Judge.

Our petitioner, North Central Airlines, Inc., is an air carrier which receives a subsidy for carriage of the mail. The subsidy is in two parts, the one part representing fair and reasonable rates of compensation for the service and the other the need of the carrier sufficient to enable it to continue the development of air transportation required for the commerce of the United States, the

Postal Service, and the national defense.[1] The former part is paid by the Postmaster General and the latter by the Civil Aeronautics Board. In 1961 the Board promulgated a rate applicable to the computation of the subsidy of a group of carriers. So that the rate would fall ultimately without unevenness upon all of the group, the Board devised and applied a profit-sharing feature. Under it the gross subsidy of a carrier was calculated under the rate; then a profit-sharing was computed and part of the subsidy returned to the Government.

In 1962[2] Congress added to the Internal Revenue Code of 1954 a provision for a credit against income taxes, measured by a percentage of qualified investment.[3] Then in 1964 Congress enacted the following:[4]

"(e) TREATMENT OF INVESTMENT CREDIT BY FEDERAL REGULATORY AGENCIES. —It was the intent of the Congress in providing an investment credit under section 38 of the Internal Revenue Code of 1954, and it is the intent of the Congress in repealing the reduction in basis required by section 48(g) of such Code, to provide an incentive for modernization and growth of private industry (including that portion thereof which is regulated). Accordingly, Congress does not intend that any agency or instrumentality of the United States having jurisdiction with respect to a taxpayer shall, without the consent of the taxpayer, use—

"(1) in the case of public utility property (as defined in section 46 (c) (3) (B) of the Internal Revenue Code of 1954), more than a proportionate part (determined with reference to the average useful life of the property with respect to which the credit was allowed) of the credit against tax allowed for any taxable year by section 38 of such Code, or

"(2) in the case of any other property, any credit against tax allowed by section 38 of such Code,

to reduce such taxpayer's Federal income taxes for the purpose of establishing the cost of service of the taxpayer or to accomplish a similar result by any other method."

In computing the profit-sharing for 1962 the carrier took into account the investment tax credit taken by it under the foregoing sections of the statute. The Board refused to allow it. This is the controversy now before us.

The positions of the opposing parties are clearly put. The Board says that this petitioner's subsidy was calculated on a "need" basis, that this is not merely a cost-of-service-plus-profit compensation but includes payment in excess of that measurement, in order to furnish the carrier, as the statute provides, with means whereby to enable it to continue development. Thus, says the Board, all the purposes of the income tax investment credit have been met by the "need" calculation of the subsidy, and to allow the credit in the profit-sharing computation under the subsidy would be to allow the sum to the carrier twice. The carrier (petitioner here) says that the Congressional language and the Congressional purpose in the 1964 enactment were indubitably clear; that Congress meant and provided that a reduction in taxes should apply for national economic reasons to all taxpayers, and it was compelled to make the point quite specific in respect to regulated industries; and that thus the credit was applicable "across the board".

We agree with the carrier's contention. The provision in the 1964 Act was that the regulatory agencies should not reduce a taxpayer's taxes for the

---

1. The text is a condensation of Sec. 406, Federal Aviation Act of 1958, 72 STAT. 763, amended, 76 STAT. 145 (1962), 49 U.S.C. § 1376.

2. 76 STAT. 962.

3. INT. REV. CODE of 1954 as amended, §§ 38, 46, 26 U.S.C. §§ 38, 46.

4. Sec. 203(e), Revenue Act of 1964, 78 STAT. 35, 26 U.S.C. § 38 note.

purpose of establishing "a similar result by any other method." This last clause seems to us to cover the problem before us. In the case of a regulated utility, if the regulating agency used the tax credit to reduce taxes in the computation of cost of service, so that cost of service declined, the allowable rate would decline and the utility would receive no benefit from the credit. In the case of a subsidized utility, the use of the credit to reduce taxes in the computation of the subsidy would reduce the subsidy. This would be a "similar result" to the one prohibited in the case of a regulated rate computation, and accomplished by another method. The use of the credit in this fashion to reduce taxes in the case of a mail subsidy being computed on a need basis, does not serve to establish the cost of service. But it accomplishes a similar result by this other method. It deprives the subsidized carrier of participation in the decreed largesse. It seems to us that the language covers the point.

We would not adhere to a reading of statutory language reaching results that are absurd or at variance with demonstrable legislative history or policy,[5] but this is not such a case. Theoretically both unsubsidized and subsidized public utilities have a duty to modernize their equipment in rendering service to the public. At the same time they are not entitled to payments exceeding the cost of their service (including in that concept depreciation, return on capital, and income tax actually payable). However there is a zone of reasonableness in privately conducted utility service, whether the surveillance of the Government is in the context of a regulatory program or a subsidy program, or both. And there is a zone of judgment in regard to the pace and amount of investment and expansion.

Congress decreed that a utility should receive and retain a financial benefit from a tax credit over and above the "cost of service" to which it is entitled. It provided an incentive in order to accelerate and perhaps augment modernization of investment as compared to what would otherwise materialize, as a practical matter, in the absence of stimulation such as a tax credit. This allowance, then, was not mere windfall; it was a bounty payable on an event (new investment) that reflected an intention wished by the Government, that is, modernization of equipment. Obviously these purposes apply to the utility which receives its return not wholly in consumer rates but partly in Government subsidy. The result contended for by respondent would tend to wipe out the extra inducement to subsidized utilities. These considerations negative any idea that adherence to the legislative language frustrates its substantive intention.

■ The Board says we have no jurisdiction because the communication sought to be reviewed is not reviewable under the rule of Mohawk Airlines, Inc. v. CAB.[6] We disagree. The order now at bar said: " * * * the Board has determined * * * that North Central Airlines, Inc. shall refund * * *. * * * Accordingly, IT IS ORDERED, That North Central Airlines, Inc., shall refund $556,103 to the Government * * *." In the *Mohawk* case the disputed document was: " * * * the Board has determined to disallow * *. Accordingly, we intend to make an offset * * *." We held the quoted letter to be "merely a declaration of intent" and not issued under the Federal Aviation Act. The document presently involved at bar was a peremptory directive and directly concerned the amount of mail pay. Thus it was under the Aviation Act.

Reversed and remanded for the entry of an order in accord with this opinion.

5. United States v. American Trucking Ass'ns, 310 U.S. 534, 542–543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

6. 117 U.S.App.D.C. 326, 329 F.2d 894 (D. C. Cir. 1964).