426

**DUTCHESS COUNTY AVIATION, INC.,**
Plaintiff,

v.

**ADMINISTRATOR OF the FEDERAL AVIATION AGENCY and the County of Dutchess (State of New York), Defendants.**

United States District Court
S. D. New York.

March 9, 1966.

Nathaniel Rubin, Poughkeepsie, N. Y., and Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for plaintiff; Robert Beshar, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for defendant Federal Aviation Agency; Edward L. Smith, Asst. U. S. Atty., of counsel.

George E. Whalen, Poughkeepsie, N. Y., for defendant Dutchess County.

METZNER, District Judge.

Defendant, the Administrator of the Federal Aviation Agency (FAA), has moved pursuant to Fed.R.Civ.P. 12 and 56 for an order dismissing the complaint for lack of jurisdiction, or in the alternative for summary judgment.

The plaintiff manages the Dutchess County Airport under contract from the defendant county. The contract provides, in part, that the plaintiff has the exclusive right to sell gasoline and oil at the airport. The FAA has determined that the exclusivity clause violates the Federal Aviation Act.

The plaintiff seeks a declaratory judgment that the Administrator's determination that the contract between plaintiff and the county violates federal law be declared null and void and that the Administrator be restrained from taking any action pursuant to that determination.

The plaintiff asserts that the Chief of the New York Area Airport Branch of the FAA has indicated that the clause violates the terms of the deed by which the airport was conveyed to the county, that the transfer is in "default," that the county will not receive future federal grants-in-aid, and that he has threatened reversion in an effort to get the county to breach its contract with plaintiff.

The Administrator asserts that his determination is not subject to judicial review and that all he has indicated to date is to determine that the airport is not eligible for future federal grants-in-aid because of the exclusive dealing provision. Dutchess County, which seems to be a nominal defendant herein, agrees with plaintiff that reverter has been threatened.

The question presented for determination is whether the action of the Administrator in determining that the exclusivity clause is prohibited by statute or regulation, is reviewable by the court.

Some background as to the acquisition of the airport by the county in 1947 will aid in the understanding of the respective positions of the parties. Shortly after the Second World War the federal government disposed of hundreds of small airports, pursuant to the Surplus Property Act of 1944 (58 Stat. 765). They were given by quitclaim deed to local governments. All deeds were subject to certain reservations and restrictions in favor of the United States, including:

"7. That no exclusive right for the use of any landing area or air navigation facilities, as such terms are defined in W. A. A. Regulation 16, included in the above-described real estate, shall be granted or exercised."

Regulation 16 defines "landing area" as

"land * * * together with improvements thereon and necessary operational equipment used in connection therewith, which is used for landing, take-offs, and parking of aircraft. The term includes, but it is not limited to runways, strips, taxiways and parking aprons." 10 Fed.Reg. 14204 (Nov. 17, 1945).

A statute permitting the grantees of surplus airports to allow the exclusive right to sell gasoline and oil was added to the Surplus Property Act on July 30, 1947, three months after the airport was transferred to Dutchess County, 50 App. U.S.C. § 1622(g) (2) (C) (2).

At the time of the transfer the Civil Aeronautics Act of 1938, ch. 601, § 303, 52 Stat. 986, provided, in relation to federal grants-in-aid, that:

"There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended."

This statutory prohibition has been continued in the existing Federal Aviation Act, 49 U.S.C. § 1349(a). "Landing area" is defined in the Federal Aviation Act as:

" * * * any locality, either of land or water, including airports and intermediate landing fields, which is used, or intended to be used, for the landing and take-off of aircraft,

whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for receiving or discharging passengers or cargo." 49 U.S.C. § 1301(22).

The airport has always been operated pursuant to a lease containing an exclusive gas and oil clause. The present problem arose in the course of the negotiations for a lease with a new operator, the plaintiff herein. In an affidavit in support of the present motion, the Administrator explains that the New York District Office of the FAA had assumed that the 1947 amendment of the Surplus Property Act was controlling. Reconsideration of this assumption occurred in 1965 during the agency's consideration of the agreement between plaintiff and Dutchess County.

Defendant maintains that his determination that the exclusivity clause is prohibited was made under the Federal Aviation Act. The determination is based on a finding that "landing area" embraces the furnishing of gas and oil. The resulting sanction imposed was denial of grants-in-aid to the county under that act.

The Administrator claims that he has not made his determination pursuant to the Surplus Property Act and he has not called for reversion of the property. However, as can be seen from the above references to the Surplus Property Act, regulations and quitclaim deed, the defendant would make the same determination as to the exclusivity clause, which would result in reversion of the property to the Government. There is no possibility of a different result based on a finding that the 1947 amendment to the Surplus Property Act applies to then existing leases. The Administrator explicitly denies retroactive effect to the exemption of gas and oil provisions contained in that amendment.

The proper focus of the question of judicial review herein is on the effect of what the defendant has done and not under what particular act (Surplus Property Act or Federal Aviation Act) he claims to have acted. We do not review here whether or not funds should be disbursed, but rather the defendant's allegedly illegal acts as they affect this particular plaintiff.

The determination having been made, the plaintiff need not wait until reverter is declared by the defendant before testing his rights in court.

Plaintiff relies on 5 U.S.C. § 1009 of the Administrative Procedure Act, which in pertinent part states that:

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion. (a) Any person suffering legal wrong because of any agency action * * * shall be entitled to judicial review".

The Federal Aviation Act is silent on the question of judicial review. Compare 38 U.S.C. § 211(a) (veterans' benefits) and 5 U.S.C. § 793 (awards under Federal Employees' Compensation Act), which explicitly preclude judicial review. The legislative history of the act is devoid of any reference to whether Congress thought there could be judicial review in a situation where it was alleged that the Administrator was acting contrary to law. The defendant relies on a speech by then Representative Dirksen wherein he proposed administrative review of the Administrator's determination by the Secretary of Commerce, 91 Cong.Rec. 9794, but the defeat of his proposal sheds no light on our problem. The Court has held that even where the statute has language indicating finality of administrative determination, judicial review may still be available. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) ("final and conclusive on all officers of the Government"); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Lloyd Sabaudo Societa etc. v. Elting, 287 U.S. 329, 53 S.Ct. 167, 77 L.Ed. 341 (1932) ("shall be final").

The Administrator principally relies on three Supreme Court cases to support his contention that there is no judicial review herein. Schilling v. Rogers, 363

U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) (5–4); Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); Switchmen's Union of North America v. National Mediation Bd., 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943) (4–3). In *Schilling* an alien sought judicial review of an administrative determination by the Director of the Office of Alien Property. The statute there involved stated explicitly that the sole relief available was by terms of the act. Further, the Court noted that it was

> "not a case in which it is charged * * * that an administrative official * * * acted beyond the scope of his powers". 363 U.S. at 676–677, 80 S.Ct. at 1295.

In *Panama Canal* petitioners sought to compel the Panama Canal Co. to prescribe new tolls and to refund tolls which were alleged to have been collected illegally in the past. The Court noted that the matter of fixing toll rates was largely an executive and legislative one, 356 U.S. at 317, 78 S.Ct. 752. Foreign policy considerations that are intertwined in the Panama Canal toll rate structure seem to have wrought the following language in the opinion:

> "We deal here with a problem in the penumbra of the law where generally the Executive and the Legislative are supreme." 356 U.S. at 317, 78 S.Ct. at 757.

The Court considered various legislative and executive checks on the Panama Canal Co.'s decision not to revise tolls. The situation in the instant case is not analogous. There are no foreign policy elements here. Further, it has not been shown that the Administrator's decision in this case has been or can be checked by other branches of the Government. In fact, the Administrator's attempts to repeal the section of the Surplus Property Act allowing gas and oil exclusives have met with failure. S. 3680, 87th Cong., 2d Sess. (1962); S. 88, 88th Cong., 1st Sess. (1963); S. 1735, 88th Cong., 1st Sess. (1963); H.R. 10063, 89th Cong., 1st Sess. (1965).

In *Switchmen's Union* the National Mediation Board had ruled that it lacked the power to establish a bargaining unit confined to a portion of the properties of a single carrier. The Court held that this determination was not reviewable. The case arose before the adoption of the Administrative Procedure Act, and the statute under consideration was silent as to reviewability. Later decisions of the Supreme Court seem to have confined the *Switchmen's Union* case to its particular facts. See Rusk v. Cort, 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); Brownell v. Tom We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956); United States v. ICC, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949); Board of Governors v. Agnew, 329 U.S. 441, 67 S.Ct. 411, 91 L.Ed. 408 (1947); Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Cox, The Major Labor Decisions of The Supreme Court October Term 1958, ABA Section of Labor Relations Law Proceedings 23, 31–37 (1959); Jaffe, Judicial Control of Administrative Action 344 (1965). The harshness to an injured party of a finding of an absence of judicial review perhaps explains the trend of the aforementioned cases. See Hart & Wechsler, The Federal Courts and The Federal System 324–25 (1953). In this context the Supreme Court has stated that:

> " 'Exemptions from the * * * Administrative Procedure Act are not lightly to be presumed,' * * * and unless made by clear language or supersedure the expanded mode of review granted by that Act cannot be modified." 352 U.S. at 185, 77 S.Ct. at 256.

The defendant argues that because of the administrative burdens of preparing a national airports plan for the United States, 49 U.S.C. § 1102, and administering the spending of millions of dollars under it, 49 U.S.C. § 1104, the courts should be hesitant to enter this area. It would seem true that the Administrator must be allowed a wide range

of choice in the disbursement of funds. Nevertheless, where it is alleged that he acted contrary to law and caused a legally recognized injury to another, this would be a matter for judicial determination. Cf. Leedom v. Kyne, supra; Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. Jan. 28, 1966).

The Administrator next contends that if his determination is reviewable, such determination is not ripe for judicial review. The ripeness doctrine is properly invoked in two basic kinds of situations. First, where a party fails to exhaust his administrative remedies. Such is not the case here simply because there are no administrative remedies for this petitioner to exhaust. Second, the ripeness concept is invoked when the threat of legal injury to the plaintiff has not crystallized sufficiently. Compare Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948), with United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); see generally Davis, Ripeness of Governmental Action for Judicial Review, 68 Harv.L.Rev. 1326 (1955). In the present case the Administrator has stated in no uncertain language that the county will be ineligible for federal aid as long as the exclusivity clause in plaintiff's contract is maintained. He has directed the county to eliminate the clause on the ground that it is prohibited by the relevant statutes. The Administrator has made known his position in the Federal Register, 30 Fed.Reg. 13661, Oct. 25, 1965; 27 Fed.Reg. 7054, July 17, 1962.

Further, by affidavits and in the complaint plaintiff claims that the Administrator has threatened to hold the county in default and exercise his power, 50 App. U.S.C. § 1622b, of reversion over the airport. The Administrator's actions are said to have caused difficulties to plaintiff in dealing with customers and employees. The ultimate purpose of the Administrator is alleged to be to cause the county to breach its contract with the plaintiff. The Administrator replies that he has not yet exercised reversion of the airport deed. He contends that his letter stating the county was in default was essentially a legal opinion and a declaration of intent. Yet elsewhere in his brief the Administrator states that his policy statement in the Federal Register "has the force of law."

In Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942), the FCC claimed that it had merely made an announcement of policy and had neither refused a new license nor canceled one on the basis of such policy. The Court found this to be an exercise of rule making power. The Court stated:

"It is enough that * * * the regulations purport to operate to alter and affect adversely appellant's contractual rights and business relations * * *." 316 U.S. at 422, 62 S.Ct. at 1203.

The Court indicated that an administrative determination does not cease to be reviewable

"merely because it is not certain whether the Commission will institute proceedings to enforce the penalty incurred under its regulations for non-compliance." 316 U.S. at 418, 62 S.Ct. at 1200.

The Court has continued to pierce the administrative label on administrative action and to focus on whether or not an allegedly injured party is without recourse from an administrative determination that is in effect final. See Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); United States v. Storer Broadcasting Co., supra. The situation herein is beyond the investigatory stage. Compare Brandenfels v. Day, 114 U.S.App. D.C. 374, 316 F.2d 375 (D.C.Cir. 1963). Further, the situation is not analogous to the one facing the Court in Chicago & Southern Air Lines v. Waterman S. S. Corp., 333 U.S. 103, 68 S.Ct. 431, 92 L. Ed. 568 (1948). There the Court was asked to review an order which was still subject to ultimate review by the President. Consistent with judicial process the Court would not render an advisory opin-

ion. See 333 U.S. at 114, 68 S.Ct. 431. Nor has it been shown by the Administrator that the petitioner has another remedy available. Compare Mohawk Airlines, Inc. v. CAB, 117 U.S.App.D.C. 326, 329 F.2d 894 (D.C.Cir. 1964). In his brief the Commissioner states that his ruling has "the force of law" and this is quite unlike the Federal Maritime Commission's position in American President Lines, Ltd. v. Federal Maritime Comm., 114 U.S.App.D.C. 418, 316 F.2d 419 (D.C.Cir. 1963). We have here a party who can reasonably anticipate a recognized legal injury, see Columbia Broadcasting System, Inc. v. United States, supra; cf. Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), as a result of the Commissioner's actions.

The motion to dismiss is denied. The motion for summary judgment is denied.

So ordered.