John W. WARNER, Secretary of the Navy, et al., Petitioners,

v.

Honorable W. Harold COX, United States District Judge for the Southern District of Mississippi, Respondent.

On Petition for Writ of Mandamus or Prohibition

LITTON SYSTEMS, INC., Plaintiff-Appellee,

v.

The Honorable John W. WARNER, Secretary of the Navy, et al., Defendants-Appellants.

Nos. 73–1627, 73–2275.

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1974.

Morton Hollander, William D. Appler, Dept. of Justice, Washington, D. C.,

Robert E. Hauberg, U. S. Atty., Joseph E. Brough, Asst. U. S. Atty., Jackson, Miss., Albert C. Kornblum, Asst. Gen. Counsel, Dept. of the Navy, Washington, D. C., Raymond D. Battocchi, Dept. of Justice, Washington, D. C., for defendants-appellants.

W. Harold Cox, U. S. Dist. Judge, Jackson, Miss., Robert L. Ackerly, Herbert L. Fenster, Washington, D. C., W. Timothy Jones, E. L. Brunini, Jackson, Miss., for plaintiff-appellee.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

GEE, Circuit Judge:

On May 1, 1969, Appellee, Litton Systems, Inc. (Litton), and the Navy Department executed a multi-billion dollar contract for the procurement of five large ships, each about the size of an aircraft carrier, described as Landing Helicopter Assault Vessels (LHA). The contract's novel concept, and at least a remote if not a proximate cause of this suit, was "total package procurement." Litton was not only to construct but to design the vessels, a departure from received procurement wisdom.

Litton's design responsibility entailed a substantial paper-work phase preceding any hardware production, thus requiring modification of the Navy's standard "per cent of physical completion" payment clause. In so doing, the scriveners fathered what we may charitably call a hybrid: for the first forty months, a period deemed sufficient for completion of design and a good start on production, Litton was to be reimbursed weekly for its actual costs incurred; thereafter, payment was to be made upon the conventional percentage-of-completion plan. Transition from one payment plan to another was to be accomplished by determining the amount which would have been due on a percentage-of-completion basis at the end of the initial forty-month period and comparing it with actual payments made to Litton. Any overage was to be refunded by Litton under an arrangement, appar-

ently intended as an exclusive remedy, whereby Litton would continue work without pay for a period not exceeding three months and would then repay in cash any amount remaining due after credit for the unpaid work.

At the end of the initial period and one agreed six-month extension, the officer in charge of the contract for the Navy (contracting officer) denied any further extension of the cost refund program, thus placing payment on a percentage-of-completion basis, and determined that at the point of transition Litton had received nearly fifty-five million dollars in overpayments. Litton promptly took an administrative appeal to the Armed Services Board of Contract Appeals, where it pends. At about the same time, Litton applied to a different official, the financing officer, for an unrelated administrative remedy, deferment of the repayment until the contract appeal fixed its amount. This remedy, founded in regulations of general application[1] and not in the text of the contract, but similar or identical in effect to the extension sought of the contracting officer, was also denied. Litton sued in United States District Court to reverse this denial, asserting that the financing officer had violated various regulations in ruling adversely on its request for deferred payment. Jurisdiction was pleaded in the federal question, mandamus and declaratory judgment statutes (28 U.S.C. 1331, 1361, 2201–2202) and in the Administrative Procedure Act (5 U.S.C. 702–706). The United States resisted, asserting mandatory and exclusive jurisdiction in the Court of Claims under the Tucker Act.

The court below ruled it had federal question and Administrative Procedure Act (APA) jurisdiction, concluded that the Navy had indeed transgressed various procurement regulations, and entered an injunction obliquely ordering the defendants to continue to pay Litton's vouchers currently,[2] an expenditure averaging approximately three million dollars per week. This appeal and a petition for writ of mandamus or prohibition to confine the court below to its jurisdiction followed, were heard and will be decided together. After argument of this case, we stayed the district court injunction pending our decision on the merits. We now reverse.

■ This is a suit against the United States, though in form against its ministers, Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). The order of the court below amply meets the *Dugan* test, expending itself (with sensible impact) on the public treasury and compelling the government to pay money in advance of the time specified in its contract, money which it conceivably might never otherwise have to pay at all.

Litton virtually conceded at oral argument that jurisdiction in the district court must stand on the APA or fall.[3] In the view which we take of the case, a correct resolution of the issues raised by the briefs of sovereign immunity and its waiver vel non, of the extent to which the APA is to be deemed a grant of jurisdiction, and of the interplay of the APA and the Tucker Act[4] commences and virtually ends with analysis and characterization of Litton's claim and of the relief Litton seeks and has received

---

1. Armed Services Procurement Regulations E–614, 616, 32 C.F.R. 163.112, 163.114.

2. In form, the order restrained defendants from recouping the ascertained $55 million overpayment by any means, including " . . . refusing to honor Plaintiff's invoices properly prepared on the basis which has heretofore been employed."

3. Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), rejects 28 U.S.C. § 1361 (jurisdiction of mandamus actions against government of-

ficials) and 28 U.S.C. § 2201 (authority to grant declaratory relief) as independent jurisdictional bases in a suit against a government official for payment of money. Although Litton's concession did not extend to 28 U.S.C. § 1331 (federal question jurisdiction), our view that sovereign immunity, unless waived, bars suit on this claim except in the Court of Claims focuses the inquiry squarely on the APA's effect on jurisdiction.

4. 28 U.S.C. §§ 1346, 1491.

from the district court. Once this claim is properly identified, the rest becomes plain.

None of the substantive claims presented to the court below concerned anything but the payment of money—when, how much, and by whom it should be paid. The government contends that all were founded solely in Litton's express contract with the United States, and that it has consented to be sued ex contractu only in the Court of Claims under the Tucker Act. Litton urges that its sole claim below was for review of administrative errors committed in the process of refusing a deferred payment agreement, noting that such agreements have their source in general procurement regulations rather than in this contract. It points out in this connection that the more distinctively contract claims—the amount of the overpayment and termination of the cost reimbursement scheme of payment—are already on administrative appeal and ". . . *are not before the District Court.*" (emphasis Litton's)

The court below adopted Litton's view:

> This suit against these government officials in their official capacity is undeniably a suit against the United States, but it is not for the recovery of any money from the United States or the Defendants. The sole purpose of this suit is for a *review* of the administrative actions of these defendants in arbitrarily and capriciously denying deferment of the immediate payment of approximately $54,660,000 as advancements or payments in that amount in excess of the amount payable under progress estimates under the contract. (emphasis the court's)

So reasoning, the court entered an order [5] directing the United States (not to refuse) to pay Litton's multi-million

dollar weekly vouchers. The sovereign was thus directed by the district court to pay money claims which, on the face of the contract, it had a clear right to refuse. The effect of the district court's order was to extend indefinitely the operation of the cost-reimbursement clause of the contract, a matter directly before the Armed Services Board of Contract Appeals but undecided at the time of the court's order and one which will presumably make its way to the Court of Claims if the contractor is dissatisfied by the appeal board's decision of it. S. & E. Contractors v. United States, 406 U.S. 1, 92 S.Ct. 1411, 31 L. Ed. 658 (1972). In this manner, Litton achieved by indirection the interim injunctive relief which the Court of Claims, being without power to grant equitable relief, could not give.[6] For several reasons, this will not do.

■ In the first place, the APA does not provide for review under such circumstances. Specifically exempted from review is agency action for which there is some " . . . other adequate remedy in a court." 5 U.S.C. § 704. Suit under the Tucker Act in the Court of Claims has been held such an adequate remedy. Mohawk Airlines, Inc. v. CAB, 117 U.S.App.D.C. 326, 329 F.2d 894 (1964); Ove Gustavsson Contracting Co. v. Floete, 278 F.2d 912 (2d Cir., 1960). Admittedly those cases concern less than 50 thousand dollars, our case over 50 million, but Congress has not seen fit to address itself on a general basis [7] to the special problems posed by claims of great magnitude. Thus Congress' judgment seems to be that Tucker Act relief is adequate for these as well, and to that judgment we defer.

■ Second, the APA is not a waiver of sovereign immunity in this case. Although some circuit courts, including this one, have seen in the APA a broad and general waiver of sovereign immu-

---

5. In form, a temporary restraining order, but in fact, an injunction.

6. Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647, 649–650 (1973).

7. Special situations have, instead, been specially dealt with, *vide* the Lockheed loan guarantee.

nity in cases to which it applies,[8] none has yet extended this to suits seeking money damages against the United States. See Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); Kletschka v. Driver, 411 F.2d 436 (2d Cir., 1969); Estrada v. Ahrens, 296 F.2d 690 (5th Cir., 1961). It has been suggested that our decision in Colson v. Hickel, 428 F.2d 1046 (5th Cir., 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971), marks a retreat from the view of the APA taken in Estrada. See Littell v. Morton, 445 F.2d 1207, 1212 (4th Cir., 1971). This we need not determine here. Assuming for Litton's benefit that *Estrada* survives intact, the case provides the company no comfort. Whatever waiver the APA provides does not extend so far as an action ex contractu for money. Having decided that this is a contract suit against the United States solely designed to force the sovereign to pay vast sums at a time in advance of its undertaking, we hold that sovereign immunity has not been waived by the APA in such a manner as to permit it to be brought in the district court.[9]

We recognize the force of Litton's contrary characterization of the case as one in which only review of improper agency action in refusing a deferred payment agreement is sought, action arguably not otherwise reviewable in any court. But we are persuaded that, where the only purpose and sole effect of permitting such a review in the district court is what amounts to a money judgment against the United States vastly exceeding that court's Tucker Act jurisdiction, implemented by equitable powers which neither the Court of Claims nor the district court itself sitting as a Court of Claims under the Tucker Act[10] could exercise in such a case, the district court is exercising jurisdiction which Congress never intended to and never did confer upon it. Apprehending the theoretical distinction made by Litton, then, we find it too much at war with our appreciation of Congress' purpose in passing the Tucker Act to be accepted as controlling here.

Situations may well arise in which the district court has and should exercise jurisdiction, grounded in some statute other than the Tucker Act, to grant injunctive relief having the incidental effect of requiring payments to be made by the United States. National Helium Corporation v. Morton, 455 F.2d 650 (10th Cir., 1971), instanced by Litton as a contract case in which injunctive relief was granted, appears to be such a case. There, the Secretary of the Interior terminated a helium purchasing contract in a manner which the contract apparently gave him the right to do, but without complying with the National Environmental Policy Act's (NEPA) requirement that he consider the environmental consequences of his actions and make a statement of their impact. Pursuant to the contract, certain major producers of natural gas had been separating the helium produced from the combustible gas-

---

8. See, e. g., United States v. Joseph G. Moretti, Inc., 478 F.2d 418 (5th Cir., 1973); Zabel v. Tabb, 430 F.2d 199 (5th Cir., 1970); Citizens Committee for the Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir., 1970).

Other circuits have adopted the view that the APA is not a waiver of sovereign immunity. See Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529 (8th Cir., 1967); Chournos v. United States, 335 F.2d 918 (10th Cir., 1964); Cyrus v. United States, 226 F.2d 416 (1st Cir., 1955). Two circuits take the third position that the policies behind sovereign immunity may be so transcending as to require dismissal of a suit, even though the APA seemingly grants review.

In such cases the APA is deemed not to apply. See Littell v. Morton, 445 F.2d 1207 (4th Cir., 1971); Washington v. Udall, 417 F.2d 1310 (9th Cir., 1969).

The Supreme Court, viewing from afar the struggle within and among the circuits, has omitted even the mention of the doctrine in recent decisions that offered opportunities to resolve the conflict. See, e. g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

9. This holding disposes of the other basis of jurisdiction advanced. See fn. 3 *supra*.

10. See Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647, 650 (1973).

es and selling it to the United States. The effect of the termination would have been to cause the release of unseparated helium into the atmosphere as the natural gas which it accompanied was burned. The court remanded the case for the Secretary to meet the NEPA requirements, an incidental effect of which was that, during the period of the remand, the contract remained unterminated and the United States remained obliged to perform under it—by purchasing helium at tidy daily sums. If the district court can injunctively require the United States to continue to spend money in that contract case, Litton asks, why not in this one?

We answer: fairly and centrally presented in *National Helium* was a national policy having no necessary connection with the payment of money, a policy mandatorily enjoined upon the Secretary by NEPA and plainly disregarded by him in a matter having arguably irremediable consequences. Present also was one of the classic exceptions to sovereign immunity, action by the minister beyond his powers. The court's opinion places jurisdiction squarely upon the NEPA.[11] Nor were any characteristic contract issues involved. The Secretary's power to end the contract, under its terms and as a matter of *contract* law, was seemingly undisputed. Nor was any claim for money due and unpaid ripe for suit under the Tucker Act.

In our case, to the contrary, the sole congressional policy involved is purely monetary, that the United States should fairly handle its financial obligations in the defense procurement area. An elaborate system of administrative appeals and interim relief has been devised, with the Court of Claims available to resolve all at the end should this be required. Litton would have us hold that, under the APA, jurisdiction exists because the Court of Claims cannot grant the interim relief it has gotten from the district court and thus it has no "adequate remedy in a court." 5 U.S.C. § 704. We decline to do so. Congress established the Court of Claims to determine claims of this type and magnitude but deliberately withheld equitable powers from it.[12] Since the United States by reason of its nature acts only through agents, it is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA. Little imagination is needed to foresee the consequences of a holding that such claims as this may be reviewed either in a court having power to grant equitable relief against the United States or in one having none. We refuse to believe that Congress intended, in enacting the APA, so to destroy the Court of Claims by implication.

Our conclusion is strengthened by considering the posture of this very case. As noted above and emphasized by Litton, parts of this controversy were not before the district court and, of course, are not before us. The Armed Services Board of Contract Appeals is presently considering Litton's appeal of the contracting officer's decision of the amount

11. "It is the Secretary's violation of or failure *to comply with the mandate of the Environ-mental Protection Act* which furnishes a jurisdictional basis." 455 F.2d, at 654.

The Tenth Circuit, in its opinion on a later appeal of the case, confirms our understanding of the jurisdictional basis upon which it placed its decision:

"Thus, we conceive of the review of the Secretary's action as being strictly limited to compliance with the requirement of the environmental impact statement . . . We reject the plaintiff's argument that review of the termination is permissible under the Administrative Procedure Act." Na-

tional Helium Corp. v. Morton, 486 F.2d 995, 1001 (10th Cir., 1973).

Without necessarily endorsing our sister circuit's conclusion, we note only that their decision is in no sense one which intrudes upon Court of Claims jurisdiction in a case such as the instant one, where the APA is advanced as an alternative basis for district court jurisdiction of a claim falling fairly within the Tucker Act.

12. Richardson v. Morris, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973); see Glidden Co. v. Zdanok, 370 U.S. 530, 557, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

overpaid and the propriety of his refusal to extend further the cost-refund scheme of payment. Appeal lies from that board to the Court of Claims. Our district court has undertaken to rule on the propriety of the financing officer's refusal to grant a deferred payment agreement, relief essentially identical in effect to that sought of the contracting officer. It is entirely settled that collateral estoppel exists between the district court and the Court of Claims, *e. g.*, Carter v. Seamans, 411 F.2d 767 (5th Cir., 1969). The dangers noted in *Seamans* of piecemeal decision of a unitary controversy are therefore as real here as they were there. We are in Court of Claims country where we do not belong. Herewith we depart.

The order of the court below is vacated, and the cause is remanded with instructions to dismiss it for want of jurisdiction. The petition for writ of mandamus or prohibition is dismissed as moot, in view of our disposition of the appeal.

Vacated and remanded.