PIEDMONT AVIATION, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

No. 74–2355.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 10, 1975.

Decided Jan. 2, 1976.

William C. Burt, Washington, D. C., for petitioner.

Peter R. Steenland, Jr., Atty., C.A.B. (Glen M. Bendixsen, Associate Gen. Counsel, Litigation and Research, Thomas E. Kauper, Asst. Atty. Gen., Laurence K. Gustafson, Carl D. Lawson, Attys., U. S. Dept. of Justice, Thomas J. Heye, Gen. Counsel, C.A.B. and Robert L. Toomey, Atty., C.A.B., on brief), for respondent.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

This case arises on the petition of Piedmont Aviation, Inc. (Piedmont) to review and set aside Civil Aeronautics Board Order No. 74–10–145, which directed Piedmont to refund $5,381,470 to the Civil Aeronautics Board (Board) under the "profit-sharing" provisions of the applicable class rate. Piedmont contends that the order overstates the proper amount of the refund by $428,342 because the Board, in computing the "tax savings" aspect of the refund for 1966, improperly ignored the effect of the investment tax credit in reducing Piedmont's tax liability. We are not persuaded, and we affirm the Board's order.

■ Under § 406(b) of the Federal Aviation Act of 1958, as amended, the Board provides subsidies for airlines

which maintain unprofitable service to sparsely populated areas. Subsidies are paid monthly on an estimated basis. They are adjusted after the airlines' actual financial performance for the year becomes known. A carrier whose subsidy has been underestimated receives an additional payment, while an airline whose subsidy has been overestimated is required to return part of it. These determinations are based upon the level of the airlines' profit margin. The part of the subsidy which must be returned to the Board is referred to as the government's "profit-sharing entitlement."

Both the subsidy and the profit-sharing entitlement are adjusted to take into account the impact of income taxes. Thus, if it is determined that a carrier with a fifty percent effective tax rate should receive a $1,000,000 subsidy, the airline will receive $2,000,000 from the Board; half of that will be paid by the airline to the government as taxes, leaving the airline with the correct after-tax subsidy. Similarly, at year-end, if it is found that the airline, with the same effective tax rate, should refund $500,000 as the government's profit-sharing entitlement, the carrier will be required to refund $1,000,000, since the airline will be entitled to a tax refund of $500,000.

Following the teaching of *North Central Airlines v. Civil Aeronautics Board*, 124 U.S.App.D.C. 251, 363 F.2d 983 (1966), the Board determined Piedmont's estimated subsidy award for 1966 without regard to the investment tax credit provided by §§ 46–48 of the Internal Revenue Code, even though as a result of the credit Piedmont's actual tax rate was below the effective tax rate used in computing the amount of the subsidy. Going beyond *North Central*, however, the Board also calculated Piedmont's profit-sharing obligation for 1966 without considering the tax credit. Piedmont contends that the effect of the investment credit should have been included in the calculations, resulting in a lower effective tax rate and a correspondingly smaller profit-sharing obligation.

Piedmont argues that the Board's procedure deprived the airline of the benefit which Congress embodies in the investment tax credit. However, the airline is entitled to the credit only as a set-off against tax liability. With respect to the portion of the subsidy refunded to the government, Piedmont will ultimately have no such liability. Further, because the original subsidy was calculated without regard to the investment tax credit, to consider the credit in the calculation of the government's profit-sharing entitlement would afford Piedmont a windfall in addition to the subsidy to which it is entitled. Thus, we conclude that the Board was correct in its determination of the profit-sharing entitlement.

The order is

Affirmed.

WIDENER, Circuit Judge (concurring):

I concur in the result but not for the reasons given in the majority opinion.

If "effective tax rate", upon which the majority opinion is based, means what I think it does: the taxable income of the company divided into the tax it pays to reach an empirical percentage, which is called a rate, then that is essentially the system and formula used in the pre-1966 computations rather than using the statutory rates as in 1966.

I concur in the result because Piedmont seeks to have its subsidy allowed under the rules for 1966 and at the same time, for the same year, seeks to have its pay-back computed according to the rules for pre-1966 years.

If Piedmont had consented, which it could have, to using the pre-1966 rules for the year 1966, then it could have had the investment tax credit taken account of both in the allowance of the subsidy and in the pay-back computation. But, since it did not so consent, under the applicable regulations, 44 CAB 637 at 649 (1966), it has made its choice, which is binding.