**ALABAMA RURAL FIRE INSURANCE COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Frank NAYLOR, Associate Administrator of the Farmers Home Administration, et al., Defendants-Appellants.**

No. 74–4251.

United States Court of Appeals, Fifth Circuit.

April 30, 1976.

Ira De Ment, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for defendants-appellants.

Albert P. Brewer, Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

This case arises from the purported award of a contract for "backup insurance" to the appellee, Alabama Rural Fire Insurance Company (Alabama Rural), by the Farmers Home Administration (FmHA).

FmHA is an agency of the United States government authorized to provide a supplemental source of credit for farmers, rural residents and organizations. See Title 42, U.S.C., Sections 1471–1473, 1484–1487, 1490a; Title 7, U.S.C., Sections 1922, 1924(a), 1932. When credit is extended by the FmHA in the form of a loan the agency takes as security a mortgage on the real property of the borrower. As a condition to such loans the FmHA demands that the borrower maintain fire and extended coverage insurance on the mortgaged property. The FmHA encountered administrative problems in connection with the insurance requirements because many borrowers refused or neglected to maintain the agreed insurance coverage. FmHA thus

found it necessary to obtain the insurance and to charge the premiums to the borrowers' loan accounts. This situation in turn necessitated that the FmHA's county supervisors spend a substantial amount of time in obtaining the insurance for borrowers. As a result the FmHA decided to change its procedures, and in 1973 requested proposals for a contract or contracts under which insurance coverage would be obtained for borrowers who after obtaining adequate insurance could not or would not maintain such insurance in force. Appellee Alabama Rural was one of four companies solicited by FmHA to submit a proposal to provide this backup insurance.

Alabama Rural Fire Insurance Company, an Alabama corporation, is a wholly owned subsidiary of the Alabama Rural Rehabilitation Corporation, a non-profit corporation. The latter corporation was organized in 1934, and entered into a liquidation agreement with the FmHA in the early 1950s pursuant to the Rural Rehabilitation Corporation Trust Liquidation Act, Title 40, U.S.C., Sections 440 et seq., Pub.L. 81–499, May 3, 1950, 64 Stat. 98–100.[1] The liquidation agreement provided for the return to the corporation of federal assets which were to be used for rural rehabilitation purposes permissible under the corporation's charter and subject to the approval of the Secretary of Agriculture. In 1971, with the consent of the Administrator of FmHA, Alabama Rural Rehabilitation Corporation organized Alabama Rural for the purpose of selling insurance to rural residents unable to obtain insurance from regular commercial sources.

In response to the solicitation of FmHA Alabama Rural submitted a proposal to provide backup insurance for two years in fourteen states. Subsequently, appellant Nick Chiddo, a contracting officer of the FmHA, contacted Alabama Rural's chief executive officer to inquire if the corporation could provide backup insurance in all states and territories except Idaho and Puerto Rico. After negotiations an agreement was reached by Alabama Rural with Old Republic Insurance Company whereby the latter company as a reinsurer would provide coverage in all states and territories outside of Alabama except Idaho and Puerto Rico. On February 14, 1974, the FmHA accepted appellee's proposal and awarded the contract to appellee. Following the award of the contract Alabama Rural entered into discussions with the FmHA in order to work out the coordination of the project and began to incur expenses in anticipation of the implementation of the contract.[2]

On May 7, 1974, Chiddo, at the instruction of appellant Naylor, directed the appellee to cease incurring expenses under the contract until further notice. By letter dated June 11, 1974, Chiddo advised appellee that the award and acceptance of the contract were rescinded because the FmHA had concluded that appellee, as a wholly owned subsidiary of the Alabama Rural Rehabilitation Corporation, did not have the authority to enter into the contract under the Rural Rehabilitation Corporation Trust Liquidation Act. At the time of the attempted rescission the parties had not entered into a formal contract.

On June 20, 1974, Alabama Rural filed its complaint in the district court, seeking a declaratory judgment and an injunction restraining the appellants and FmHA from (i) rescinding the contract, (ii) inviting and soliciting new bids for the insurance, and (iii) revealing the appellee's unique and original plan for implementing said insurance. The complaint was amended to assert jurisdiction

---

1. The Rural Rehabilitation Corporation Trust Liquidation Act authorized the Secretary of Agriculture within three years from May 3, 1950, to liquidate trusts organized pursuant to transfer agreements with State rural rehabilitation corporations.

2. The chief executive officer of Alabama Rural testified that in anticipation of the implementation of the contract the appellee hired four additional employees, entered into a contract with a data processing firm, contracted with a service company to service the policies, secured necessary filing and office equipment and office space, installed a WATS telephone line, and incurred printing expenses.

under the Administrative Procedure Act (APA), Title 5, U.S.C., Sections 701–706, and the Declaratory Judgment Act, Title 28, U.S.C., Sections 2201, 2202. The appellants on July 24, 1974, moved to dismiss the action on the grounds that it was an unconsented to suit against the United States barred by sovereign immunity, that the Tucker Act, Title 28, U.S.C., Section 1491, provided appellee an adequate remedy for damages, and that the FmHA was a nonsuable entity. The district court on July 31, 1974, denied the motion to dismiss finding jurisdiction under the APA because the appellee lacked any other adequate remedy. Further, the district court, relying on the decisions in *Scanwell Laboratories, Inc. v. Shaffer*, 1970, 137 U.S.App.D.C. 371, 424 F.2d 859 and *Estrada v. Ahrens*, 5 Cir. 1961, 296 F.2d 690, held that the APA constituted a waiver of sovereign immunity. The court dismissed the FmHA as a defendant because it is not a suable entity.

After a bench trial on the merits, the district court found that the rescission by the appellants in their official capacities was in excess of their statutory authority and illegal, and that a valid contract existed between Alabama Rural and the FmHA. Based on these findings the court on October 25, 1974, entered its injunctive order, restraining the appellants in their official capacities from failing to perform the contract.

Alabama Rural on November 26, 1974, notified appellants of its readiness to begin performance of the contract. The appellants then moved the district court on December 9, 1974, for a stay of the judgment; this motion was denied on December 19, 1974. A notice of appeal from the October 25, 1974 injunction was filed by the appellants on December 18, 1974, and this court on January 16, 1974, granted the appellants' motion for a stay pending appeal. The district court meanwhile, on December 30, 1974, issued a show cause order on appellee's motion directing the appellants to appear on January 21, 1975, and show cause why they should not be held in contempt for failure to comply with the court's judg-

ment. After this court's stay pending appeal, the appellants moved the district court to vacate or continue the show cause order, which motion was denied by the court below on January 20, 1975. After hearing, the district court on January 22, 1975, found the appellants guilty of a civil contempt because of their failure to comply with its injunction for a period beginning December 1, 1974, through January 16, 1975 (the date of our stay). The appellants were fined $600.00 payable to Alabama Rural as compensation for expenses and losses caused by the contempt. The appellants promptly filed notice of appeal from the contempt judgment. We must dispose therefore of both the appeal from the injunctive order of October 25, 1974, and the appeal from the January 22, 1975 contempt judgment. We vacate both the orders of the district court, and remand the cause for dismissal for lack of jurisdiction.

■ The applicability of the doctrine of sovereign immunity is to be determined, not by the party named as defendant, but by the result of the judgment or decree which may be entered. *Larson v. Domestic & Foreign Commerce Corp.*, 1949, 337 U.S. 682, 687 n. 6, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628, 1634; *Louisiana v. McAdoo*, 1914, 234 U.S. 627, 629, 34 S.Ct. 938, 939, 58 L.Ed. 1506, 1507; *New Mexico v. Backer*, 10 Cir. 1952, 199 F.2d 426. Concisely stated the general rule is that a suit is barred by the doctrine "if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 1963, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15, 23; see *Hawaii v. Gordon*, 1963, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191; *Malone v. Bowdoin*, 1962, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168; *Larson v. Domestic & Foreign Commerce Corp., supra*; see also *Adams v. Nagle*, 1938, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999. Irrespective of the terminology employed by Alabama

Rural the object of the instant suit is clearly to compel the appellants in their official capacities to specifically perform a contract. Because the appellants can comply with the judgment of the district court only in their capacities as agents of the United States, the judgment in reality compels the United States to perform the subject contract, restrains it from rescinding the award of the contract, and requires it to pay out money, in the form of insurance premiums, in the performance of the contract. Manifestly this meets the tests for determining whether the United States is an indispensable party to this action, and, thus, whether suit was initially barred by the doctrine of sovereign immunity. In order to prevail on this appeal Alabama Rural must demonstrate that this suit falls within an exception to the general rule.

Traditionally, the courts have held that *ultra vires* acts of an agent of the sovereign are not those of the sovereign, and that equitable relief may be granted against the agent individually. Thus, a suit is not violative of the doctrine of sovereign immunity if (1) the officer's powers are limited by statute and he acts in excess of that authority or (2) the officer acts in an unconstitutional manner or pursuant to an unconstitutional grant of authority. *Dugan v. Rank, supra*, 372 U.S. at 621–22, 83 S.Ct. at 1007, 10 L.Ed.2d at 24; *Malone v. Bowdoin, supra*, 369 U.S. at 647, 82 S.Ct. at 983, 8 L.Ed.2d at 171; *Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 701–02, 69 S.Ct. at 1467, 93 L.Ed. at 1642. Alabama Rural does not challenge the constitutionality of the statute under which appellants acted, nor the constitutionality of the manner in which they exercised their authority. It follows that in order to come within the *ultra vires* exceptions to officer suits the appellee must show that the appellants in rescinding the award of the contract exceeded their statutory authority.

In order to plead successfully that the acts of a government officer exceed his statutory authority a plaintiff must do more than simply allege that the actions of the officer are illegal or unauthorized. The appellee averred in its complaint that the decision to rescind the award of the contract was "arbitrary, capricious, illegal and unwarranted." The court below did not cite any specific limitations on the contracting authority of the appellants as agents of the United States. Alabama Rural cites none on brief or in oral argument. The Supreme Court in *Larson v. Domestic & Foreign Commerce Corp., supra*, a case factually similar to the present one, held that in order to maintain an action for specific relief against an officer of the United States a plaintiff must not only claim an invasion of his legal rights, but, in addition, must allege facts sufficient to establish that the agent in committing the wrong was not exercising the powers delegated to him by the United States, and must specify in the complaint the statutory limitation on the powers of the agent relied upon. *Larson, supra*, 337 U.S. at 690, 693, 69 S.Ct. at 1461, 1463, 93 L.Ed. at 1636, 1637–38. See also *Carter v. Seamans*, 5 Cir. 1969, 411 F.2d 767, 770–71, cert. denied 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121; *Gardner v. Harris*, 5 Cir. 1968, 391 F.2d 885, 888.

In *Larson* the War Assets Administration contracted to sell coal to the plaintiff corporation. The War Assets Administrator interpreted the contract to require a deposit by the plaintiff prior to delivery and refused to deliver the coal to the plaintiff when an unsatisfactory letter of credit was offered. The Administrator subsequently entered into a contract with a third party for the sale of the coal, and the plaintiff corporation brought suit seeking an injunction prohibiting the Administrator from selling the coal to any third party and asking further for a declaratory decree that the sale to the plaintiff was valid. The plaintiff alleged that title to the disputed coal had passed to it upon entry of the contract and that the Administrator in refusing to deliver the coal was acting merely as an individual tortfeasor. Therefore, asserted the plaintiff, sover-

eign immunity did not bar the action against the Administrator, because a government agent empowered to make decisions has the power to make only correct decisions, and if his decisions are incorrect, as to law or fact, it follows that his actions based on those decisions are beyond his authority and not the action of the sovereign. The Supreme Court specifically rejected this argument, and held "that if the actions of [a government] officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be regarded as the actions of a private principal under the normal rules of agency". *Larson v. Domestic & Foreign Commerce Corp., supra*, 337 U.S. at 695, 69 S.Ct. at 1464, 93 L.Ed. at 1639. Chief Justice Vinson for the Court determined that the actions of the Administrator were within his valid statutory authority, on the basis that in the absence on any allegation by the plaintiff of a statutory limitation on his powers as a sales agent, the Administrator, like any other sales agent, had the power to construe the contract. Further, the Court stated that concomitant with the Administrator's power to construe the contract was the power and the duty to refuse delivery in circumstances where he believed that the terms of the contract had not been complied with. Thus, the Court held that even if the Administrator's refusal to deliver the coal was wrong, since his action was within his authority it was "inescapably the action of the United States and the effort to enjoin it must fail as an effort to enjoin the United States". *Id.* 337 U.S. at 703, 69 S.Ct. at 1468, 93 L.Ed. at 1643.

Central to the Supreme Court's analysis in *Larson* was the fact that the plaintiff therein had sought specific relief against the Administrator, rather than pursuing his remedy for damages for breach of contract in the Court of Claims. Distinguishing between suits for damages and suits for specific relief against the government the Court stated:

" . . . it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsory powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract rights. As we early recognized, 'the interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief.' "

*Id.* 337 U.S. at 704, 69 S.Ct. at 1468, 93 L.Ed. at 1643 (footnotes omitted).

■ The factual situation here fits neatly into the holding of *Larson.* Alabama Rural's cause of action rests on the premise that the appellants as agents of the government had the authority to enter a binding contract with appellee. Given the authority of the appellants to award the contract and the appellee's failure to cite any specific statutory limitation on the appellants' authority as government contracting officers, it must follow that appellants as contracting agents had the authority to rescind the award of the contract when they decided that the appellee did not have the authority to enter into the contract under the Rural Rehabilitation Corporation Trust Liquidation Act. Even assuming that the appellants' decision and action in rescinding the award of the contract was legally wrong, it was nonetheless within their authority as agents of the government to make the decision and to take the necessary action. Thus "the ef-

fort to enjoin it must fail as an effort to enjoin the United States." *Id.*[3]

Alabama Rural, however, seeks to avoid this result by asserting that the appellants' actions complained of fall squarely within the purview of Sections 702 and 704 of the Administrative Procedure Act, Title 5, U.S.C., Sections 701–706, and that, under this court's decision in *Estrada v. Aherns, supra,* the APA constitutes a waiver of the defense of sovereign immunity. The district court adopted Alabama Rural's view, holding that because the appellee does not seek money damages it has no adequate remedy in another court, and that the APA waives sovereign immunity in this case.[4]

Although we held in *Estrada v. Aherns, supra,* 296 F.2d at 698, that the APA is a waiver of sovereign immunity in cases to which the statute applies, that holding is subject to certain definite limitations. See *Warner v. Cox,* 5 Cir. 1974, 487 F.2d 1301; *Colson v. Hickel,* 5 Cir. 1970, 428 F.2d 1046, cert. denied

1971, 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810.[5] Most recently, in *Warner v. Cox, supra,* we recognized that the APA is not a total waiver of the traditional concept of sovereign immunity. In that case a contractor brought suit against the Secretary of the Navy for review of agency errors committed by a Navy financing officer in refusing the contractor's request for deferred payment. The district court ruled that it had jurisdiction under the APA, held that the Navy had transgressed certain procurement regulations, and entered an injunction ordering the defendants in effect to pay the contractor's vouchers currently. Finding that the action was actually one *ex contractu* designed to force the United States to pay money under the contract, and, therefore, that the only purpose and sole effect of permitting judicial review was a money judgment against the United States in an amount in excess of the district court's Tucker Act jurisdiction, Title 28, U.S.C.,

---

**3.** Alabama Rural contends that the appellants' rescission of the contract award was wrongful and in excess of their authority, and cite in support of that proposition *Allen M. Campbell Company v. United States,* 1972, 467 F.2d 931, 199 Ct.Cl. 515 and *Mid-West Construction, Ltd. v. United States,* 1968, 387 F.2d 957, 181 Ct.Cl. 774. Those decisions are inapposite to our present holding. In neither case did the plaintiffs seek specific relief against the United States. Nor was the jurisdictional issue of sovereign immunity raised inasmuch as both suits were actions for damages against the government, and hence clearly within the jurisdiction of the Court of Claims. Further, both cited decisions turned upon a specific regulation authorizing the contracting officer upon the passage of a certain period of time to make a binding award of a contract. But, under *Larson,* supra, a determination of jurisdiction and of the merits are separated. See Cramton, *Nonstatutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant,* 68 Mich.L.Rev. 387, 401–04 (1970); Comment, *Immunity of Government Officers: Effect of the Larson Case,* 8 Stan.L.Rev. 683 (1956).

The Ninth Circuit, relying on *Larson,* has held in a case similar to this that a suit to compel the Administrator of the General Services Administration to execute a deed conveying land to the plaintiff therein was barred by the doctrine of sovereign immunity. *White v.*

*Administrator of General Services Administration,* 9 Cir. 1965, 343 F.2d 444. Subsequently, the plaintiff *White* filed suit in the Court of Claims, and, after a trial on the merits, was awarded damages against the government for breach of contract. *White v. United States,* 1969, 410 F.2d 773, 187 Ct.Cl. 564.

**4.** The district court mistakenly relied on *National Helium Corp. v. Morton,* 10 Cir. 1971, 455 F.2d 650, as a contract case in which injunctive relief was granted against a government officer under the APA. As we noted in *Warner v. Cox,* 5 Cir. 1974, 487 F.2d 1301, 1307, the Tenth Circuit's opinion in *National Helium* places jurisdiction under the National Environmental Policy Act, and the Secretary of Interior's failure to comply with the mandate of that Act. Actually, in a later appeal of the same case the Tenth Circuit specifically rejected the argument that judicial review of the Secretary of Interior's termination of the contract was permissible under the APA. *National Helium Corp. v. Morton,* 10 Cir. 1973, 486 F.2d 995, 1001, cert. denied 1974, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772.

**5.** In *Blackmar v. Guerre,* 1952, 342 U.S. 512, 515–16, 72 S.Ct. 410, 412, 96 L.Ed. 534, 539, the Supreme Court stated:

"Still less is the [APA] to be deemed an implied waiver of all governmental immunity from suit".

Sections 1346, 1491, and implemented by equitable powers which that court sitting as a Court of Claims under the Tucker Act could not have exercised, we held that sovereign immunity had not been waived by the APA so as to permit the suit to be brought in the district court. Judge Gee stated for the court:

"Congress established the Court of Claims to determine claims of this type and magnitude but deliberately withheld equitable powers from it. Since the United States by reason of its nature acts only through agents, it is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA. Little imagination is needed to foresee the consequences of a holding that such claims as this may be reviewed either in a court having power to grant equitable relief against the United States or in one having none. We refuse to believe that Congress intended, in enacting the APA, so to destroy the Court of Claims by implication".

487 F.2d at 1306.

Similarly, in *International Engineering Co., Div. of A–T–O, Inc. v. Richardson,* 1975, 167 U.S.App.D.C. 396, 512 F.2d 573, cert. denied 1976, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636, a government contractor brought suit under the APA for a preliminary injunction to restrain the Air Force from releasing technical information contained in reports delivered by the contractor under a contract with the Air Force. The D. C. Circuit rejected the contention that damages would be an inadequate remedy, and held that, since the action was *ex contractu,* subject matter jurisdiction lay in the Court of Claims under the Tucker Act, and that Section 702 of the APA did not grant the district court jurisdic-

tion to review the disputed agency action. Quoting with approval the above excerpt from our decision in *Warner v. Cox, supra,* the court stated:

"The breadth of the district court's holding poses the greatest difficulty: to grant jurisdiction here by a finding of agency action would enable a district court to entertain a suit for injunctive relief each time a contracting officer makes a determination adverse to a private contracting party.

We simply do not think that such a result is mandated or that Congress intended to upset the carefully modulated waiver of sovereign immunity and grant of remedies for breach of contract embodied in the Tucker Act when it passed the APA. The Fifth Circuit, faced with this prospect in a case involving an injunction granted upon the basis of APA jurisdiction, refused to find such jurisdiction . . . We join in that assessment. We think it is clear that Congress did not intend that every action taken by an employee of a federal agency be within the ambit of the APA judicial review section."

512 F.2d at 580.[6]

■ While the factual situations of *Warner v. Cox, supra,* and of *International Engineering, supra,* differ from the facts here, the rationale of those decisions is nonetheless applicable. The gravamen of Alabama Rural's complaint is a claim for breach of contract, since assuming that the appellants wrongfully rescinded the award of the contract, their subsequent non-performance placed the government in breach. *See Allen M. Campbell Company v. United States,* 1972, 467 F.2d 931, 181 Ct.Cl. 774. Congress specifically waived sovereign immunity when it established the Court of Claims and vested in that court jurisdic-

---

**6.** The court below distinguished *Larson, supra,* on the basis that the decision in that case predated the 1966 amendments to the APA, and, hence, did not consider the new policies embodied in those amendments. The D.C. Circuit in *International Engineering Co., Div. of A–T–O, Inc. v. Richardson,* 1975, 167 U.S.App.

D.C. 396, 403, 512 F.2d 573, 580 n. 10, noted that "[s]tripped of its plumage, this case is not too different than *Larson.*" Further, the 1966 amendments to the APA did not materially change Sections 702 and 704. *Compare* 60 Stat. 237, 243, June 11, 1946, ch. 324, §§ 10(a), 10(c), *with* Title 5, U.S.C., Sections 702, 704.

tion over actions *ex contractu* against the United States, but limited that waiver by giving that court jurisdiction only to award damages, deliberately withholding equitable powers from it. *Richardson v. Morris,* 1973, 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647; *Glidden v. Zdanok,* 1962, 370 U.S. 530, 577, 82 S.Ct. 1459, 1487, 8 L.Ed.2d 671, 703. Should we hold in this controversy that the district court had jurisdiction under the APA to exercise its equitable powers so as in effect to compel the United States to perform the disputed contract we would, as was eschewed in *Warner v. Cox, supra,* and *International Engineering, supra,* be destroying the jurisdiction of the Court of Claims by implication.[7]

 Finally, by its own terms the APA is inapplicable to the instant suit. Section 704 of the APA provides that judicial review is inappropriate where there exists some other adequate remedy in a court, and the availability of a remedy in the Court of Claims under the Tucker Act has been held to be an adequate remedy. *International Engineering, supra,* 512 F.2d at 580; *Warner v. Cox, supra,* 487 F.2d at 1304; *Mohawk Airlines, Inc. v. C. A. B.,* 1964, 117 U.S. App.D.C. 326, 329 F.2d 894; *Ove Gustavsson Contracting Co. v. Floete,* 2d Cir. 1960, 278 F.2d 912. Despite the appellee's protestations to the contrary, the Court of Claims should be able without undue difficulty, assuming it decides that the rescission was wrongful, to determine the costs incurred by Alabama Rural in anticipation of the performance of the contract, see note 2 *supra,* and its other damages occasioned by the breach

of the contract. In sum, we discern no persuasive reason why Alabama Rural should not be limited to its remedy for damages in the Court of Claims.

 As a concomitant of our holding that the district court lacked jurisdiction to adjudicate this controversy, and because the contempt proceeding was civil in nature, *i. e.,* designed to compensate Alabama Rural for losses and expenses caused by the appellants' non-compliance with the order of the court below, *Southern Railway Co. v. Lanham,* 5 Cir. 1968, 403 F.2d 119, 125, we hold that the order of the district court finding the appellants in contempt and imposing a fine as punishment therefor falls with our reversal on the question of jurisdiction. *See Cliett v. Hammonds,* 5 Cir. 1962, 305 F.2d 565, 570.

The orders appealed from are reversed and remanded, with directions to the district court to vacate its injunction of October 25, 1974 and proceedings undertaken under it, and to dismiss this cause for want of jurisdiction.

REVERSED and REMANDED, with directions.

---

7. The district court and Alabama Rural place undue reliance on *Scanwell Laboratories, Inc. v. Shaffer,* 1970, 424 F.2d 859, 137 U.S.App. D.C. 371 and *Constructores Civiles de Centroamerica, S. A. (Concica) v. Hannah,* 1972, 148 U.S.App.D.C. 159, 459 F.2d 1183, as authority for finding that the APA waives sovereign immunity in this suit. In neither *Scanwell, supra,* or *Concica, supra,* was there any allegation that a contract existed between the plaintiffs therein and the United States. Thus, there was no available remedy in the Court of Claims. In addition, the direct concern in both decisions was whether the plaintiffs had standing to seek review of the agency action. *See International Engineering, supra,* 167 U.S.App. D.C. at 402, 512 F.2d at 579.