**PANOLA LAND BUYERS ASSOCIATION, Plaintiffs-Appellants,**

v.

**Charles W. SHUMAN, Administrator, Farmer's Home Administration, United States Department of Agriculture, in his official capacity; Dale N. Richey, State Director, Farmer's Home Administration, United States Department of Agriculture, in his official capacity, Defendants-Appellees.**

Nos. 84-7136, 84-7225.

United States Court of Appeals, Eleventh Circuit.

June 12, 1985.

Richard J. Ebbinghouse, Birmingham, Ala., Greg Bass, Legal Services Corp. of Alabama, Selma Regional Office, Demopolis, Ala., Abigail Turner, Legal Services Corp. of Alabama, Mobile, Ala., for plaintiffs-appellants.

John S. Koppel, Robert S. Greenspan, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellees in both cases.

Frank W. Donaldson, U.S. Atty., Frank S. James, III, Asst. U.S. Atty., Birmingham, Ala., for defendants-appellees in No. 84–7225.

Before HENDERSON and HATCHETT, Circuit Judges, and ALLGOOD *, District Judge.

HATCHETT, Circuit Judge:

In this appeal we review the district court's rulings on jurisdiction, sovereign immunity, exhaustion of administrative remedies, and the granting of summary judgment for the Farmers Home Administration and against a loan applicant. We remand for further proceedings.

### FACTS

Section 515 of the National Housing Act of 1949, 42 U.S.C.A. § 1485(a) (1978, Supp. 1984), authorizes the Secretary of Agriculture to "make loans to private non-profit organizations to provide rental or cooperative housing, for elderly or handicap persons or families of low or moderate income or other persons and families of low income in rural areas." The Rural Cooperative Housing (RCH) and Rural Rental Housing (RRH) loan programs are two such programs. It is the provisions governing eligibility for the RCH loans which concern us in this case.

An applicant for an RCH loan must possess the "financial capacity to incur and carry out the undertaking and obligations required for the loan." 7 C.F.R. § 1944.-211(a)(6) (1984). Further, a housing project which is to receive an RCH loan must be in a project location which promotes

> an equal opportunity for the inclusion of all groups regardless of race, color, religion, sex, national origin, age, marital status, or physical or mental handicap ... thereby opening up nonsegregated housing opportunities for minorities and helping overcome the effects of any past discrimination. *To the extent possible, the location of an RRH project [also an RCH project] should provide housing opportunities for minorities outside areas of minority concentration and areas which are already substantially racially mixed.*

7 C.F.R. § 1944.215(q)(2) (1984) (emphasis added). Further, "housing projects must be located in residential areas as part of established *rural* communities where essential public facilities ... and services ... are readily available in close and convenient proximity to the site." 7 C.F.R. § 1944.215(q)(3) (1984). The Farmers Home Administration (FmHA) administers the loan program. To become eligible for an RCH loan, a "preapplication is to be filed with the District Director of FmHA to determine the applicant's eligibility and feasibility and priority for available funds." 7 C.F.R. § 1944.231 (1984). If the district

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

director determines that a preapplication is eligible and feasible, the application is then evaluated by the district director in accordance with a priority processing system which establishes preference in selecting and processing loan requests within the annual allocations. 7 C.F.R. § 1944.-231(b)(3) (1984).

In 1966 in Sumter County, Alabama, forty black families of former sharecroppers formed the Panola Land Buying Association (Panola), the appellant. The families formed the association following their evictions resulting from a dispute involving the correct share of deferred acreage payments from the Department of Agriculture. No longer able to live on the land which they had worked, Panola, in 1967, redeemed a 900-acre parcel of land in a foreclosure sale. In 1970, Panola contacted FmHA and discussed the possibility of obtaining an RCH loan to build 50 houses, the first phase of constructing 200 units. FmHA determined that the available water and sewage treatment for the Panola site (Wendy Hills) was inadequate. By 1978, adequate water and sewage treatment became available to the site, partly by FmHA financing, and Panola applied for funding for the construction of 100 units on the site. FmHA provided an RCH loan for forty units with section 8 subsidies, and Panola constructed the units.

On July 27, 1981, the Panola Land Buying Association Housing Development Corporation (Panola) submitted a preapplication to the FmHA District Director, Obery Lawson (Lawson), on July 27, 1981, for an RCH loan and rental assistance for the construction of an additional sixty units. On November 24, 1981, Lawson notified Panola of the denial of its preapplication stating that "there will be no rental assistance available for new construction." The written notice, form AD 622, implied that if HDC reapplied during the March, 1982, review period, then its preapplication would

be considered "feasible" if the application did not require "rental assistance deep subsidy." On December 1, 1981, a Panola official telephoned the district director's office and asked the basis for the statement that rental assistance funds were not available. On December 2, 1981, Director Lawson amended the November 24, 1981, form AD 622 to include additional reasons for denial of the preapplication, including: (1) the units would concentrate too many low income and black persons in a majority black community and (2) the site was not close enough to "an established rural community." The denial of the preapplication meant that the preapplication could not be ranked within the priority processing system. This was true even though a FmHA official had ranked the Panola preapplication at the maximum level. Further, applications which were ranked in October, 1981, but not funded, could be updated for reconsideration in April, 1982, without being ranked a second time. On December 2, 1981, Panola submitted the preapplication for a second time to take advantage of this ranking procedure. Director Lawson returned the preapplication without evaluation indicating that the site problems "must be cleared" before the preapplication could be considered.

Panola appealed the denial of the preapplication to the state FmHA director. At an administrative hearing in November, 1982, Panola presented evidence showing that the application of the minority concentration regulations adversely impacted on poor blacks in the majority black county of Sumter, and showing that the overwhelming need for decent housing met the need-exception in the regulations. The evidence revealed that 84 percent of the housing in the county was substandard, and almost all the substandard houses were occupied by blacks.[1]

Panola also offered evidence that the Wendy Hills project site was adjacent to

---

1. A housing survey showed that 40 of the 100 families surveyed had no running water and were forced to use outdoor toilets; a black father with a 9-member family and employed as a part-time worker earned less than $4,000 a year. Another family, in which the father worked full time on a farm and the mother worked as a housekeeper with earnings of less than $8,000 a year supported a family of 10. The house which they rent has neither a bathroom nor running water.

essential public services such as schools, shopping, medical services, and a health clinic. The hearing officer, however, upheld the district director's denial of the preapplication because (1) the project would not be feasible without rental assistance, and (2) the site was not located in a residential area in an "established rural community where essential public facilities and services are readily available in close and convenient proximity to the site."[2] Panola appealed to the Administrator of FmHA arguing that the site had previously been approved, that the hearing officer was biased, and that racial discrimination was part of the administrative decision-making as indicated by thinly veiled racist statements. The Administrator upheld the intermediate administrative decision on the ground that the project site was not located in a residential area as part of an established rural community.

On May 27, 1984, Panola filed suit in United States District Court alleging in four causes of action racial discrimination in the denial of the preapplication.[3] Panola prayed for a declaratory judgment that FmHA violated the various laws alleged and that FmHA should give greater weight to the housing need of low and moderate income persons in Sumter County in evaluating the eligibility of applications for funding. Panola also prayed for a permanent injunction requiring that its application for section 515 rural housing funds be considered on a priority basis, and requiring that rental assistance funds be made available to tenants occupying the project. Panola also requested attorney's fees and costs.

Appellees filed motions to dismiss on the pleadings or alternatively, for summary judgment, contending that Panola did not have standing, that it failed to state a statutory or constitutional claim, and that FmHA denied the preapplication for legitimate, nondiscriminatory reasons. FmHA also moved for a protective order against Panola's request for production of documents and interrogatories pending a ruling on FmHA's motion for summary judgment or motion to dismiss. The United States Magistrate allowed discovery to proceed on the issue of the availability of rental assistance funds, but suspended all other discovery pending the district court's determination of the motion to dismiss or motion for summary judgment. The district court upheld the magistrate's order and granted the motion for summary judgment, holding that

(1) plaintiff has failed to state a constitutional claim upon which this court's jurisdiction can be invoked;

(2) under the circumstances of this case, defendants' actions are protected by sovereign immunity;

(3) plaintiff has failed to exhaust his adequate administrative remedies;

(4) plaintiff has made absolutely no showing that the defendant agency's conduct was 'arbitrary and capricious';

(5) the agency's decision is amply supported by substantial evidence on the record;

(6) plaintiff has failed to establish circumstances which would empower this court to overturn agency decisions and/or refute the agency's findings of fact; and

(7) this court has no authority whatsoever to order the invasion of the public treasury or, absent some showing of

---

**2.** The hearing officer had done an appraisal of the site in 1980 and had approved it.

**3.** The four causes of action alleged injury caused by FmHA's failure to consider the history of race discrimination in housing in Sumter County, to redress historical housing discrimination in Sumter County, and to ensure that the distribution of FmHA loan funds does not have a racially discriminatory effect. This conduct was alleged to violate Title VIII of the Civil Rights Act of 1968, 42 U.S.C.A. §§ 3601 et seq.,

3603(a)(1)(C), and 3608(c) (1977, Supp.1984); Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d et seq. (1981), 7 C.F.R. §§ 1901.202 and 1901.203 (1984); the due process clause of the fifth amendment; and with the additional conduct of denying the loan on the basis the site was located in an "established rural community," and by applying the minority site concentration regulations in an arbitrary and capricious manner, a violation of 7 C.F.R. §§ 1944.215 (1984) and the Administrative Procedures Act, 5 U.S.C.A. §§ 701–706 (1977).

misconduct, require that the agency provide plaintiff with a loan.

For any of these alternative reasons, defendants' motion for summary judgment is due to be granted; judgment is due defendants as a matter of law; there exists no genuine issue of material fact; and there is no just reason for delay in entering final judgment.

## ISSUES

The issues presented in this appeal are (1) whether sovereign immunity bars Panola's claims; (2) whether Panola failed to exhaust administrative remedies; (3) whether a genuine issue of material fact exists; (4) whether it was improper to curtail discovery; (5) whether the district court applied an incorrect standard of review of the administrative proceedings; (6) whether Panola alleged viable equal protection and procedural due process claims; (7) whether FmHA breached its affirmative obligations under the Fair Housing Act to assist in overcoming the effects of past discrimination through denial of the preapplication and failure to consider the overriding housing need in Sumter County; (8) whether the denial of the preapplication perpetuated a badge of slavery; and (9) whether any available remedies exist to correct the allegations of racial discrimination.

## DISCUSSION

### I. Sovereign Immunity

The district court held that sovereign immunity bars judicial review of this action. We disagree.

■ The defense of sovereign immunity is waived in actions against federal government agencies seeking nonmonetary relief if the agency conduct is itself subject to judicial review. *Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132, 1139 (5th Cir.1980); 5 U.S.C.A. § 702 (1977).[4]

■ In analyzing the use of any sovereign immunity defense, the first question is whether the doctrine applies at all: Is the action a suit against the United States as a sovereign? The answer is obtained by examining the nature of the relief which may be provided. *Alabama Rural Fire Insurance Co. v. Naylor*, 530 F.2d 1221, 1225 (5th Cir.1976). See *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 n. 6, 69 S.Ct. 1457, 1460 n. 6, 93 L.Ed. 1628 (1949). An action is one against the United States as a sovereign where the judgment sought is to be satisfied from monies of the federal Treasury, or where the judgment interferes with public administration, or where the judgment's effect is to compel or restrain the government's actions. *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Alabama Rural Fire Insurance Co. v. Naylor*, 530 F.2d at 1225. The appellee officials of FmHA contend that the doctrine of sovereign immunity applies to this action because "plaintiff [Panola] seeks the expenditure of funds from the public treasury." In the appellees' view, Panola seeks an injunction against appellees from "refusing to grant plaintiff's application for Section 515 rural housing funds" and from "failing to make rental assistance

**4.** Section 702 of the Administrative Procedures Act (5 U.S.C. § 702 (1976)) provides:

A person suffering legal wrong because of agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

funds available to tenants who will occupy housing constructed at Wendy Hill subdivision in the event FmHA has such subsidies available in the future." Panola contends that it "merely seeks an order that FmHA consider its preapplication in accord with applicable statutes."

■ Our review of the pleadings indicates that Panola seeks to require FmHA to review the preapplication in a nondiscriminatory manner and consistent with the site selection criteria. Panola asks for declaratory judgment that FmHA has violated its obligations by (1) not affirmatively promoting the national housing goal of providing decent, safe, and sanitary housing for low and moderate income people in rural areas, 42 U.S.C.A. § 1441 (1978); (2) not providing full and rational consideration to the preapplication, 42 U.S.C.A. § 1485 (Supp.1980); (3) not providing rational consideration of the displacement of rural persons in Sumter County, Alabama, as a factor in determining eligibility; (4) not considering Panola's preapplication in a nondiscriminatory manner; (5) not complying with the procedural due process requirements in processing Panola's preapplication; (6) failing to consider the shortage of decent, safe, and sanitary housing in Sumter County for low and moderate income persons; (7) failing to consider the history of housing discrimination in Sumter County; (8) failing to apply the minority concentration regulations in a manner which will not exclude housing opportunities for blacks in Sumter County; and (9) failing to consider a loan for housing outside an incorporated area. As to these claims for relief, the doctrine of sovereign immunity does not apply for no interference with public administration occurs.

■ Panola's prayer for permanent injunctions against FmHA requiring it (1) to consider Panola's application on a priority basis, (2) to grant its application, and (3) to require FmHA to make rental assistance funds available to tenants at the Wendy Hill subdivision in the future is a different matter. These claims are barred by sovereign immunity; they interfere with public administration. They seek to preempt FmHA's authority to approve applications

for loans and to make loans. *See* 42 U.S.C.A. § 1480 (1978, Supp.1984); 7 C.F.R. § 2.70 (1984). As a whole, however, Panola's requested relief is properly understood to entail a declaratory judgment defining its rights under the National Housing Act of 1949, 42 U.S.C.A. § 1485 (1978, Supp. 1984). Therefore, sovereign immunity is not a bar to judicial review of most of Panola's allegations and actions.

## II. Exhaustion of Administrative Remedies

■ The district court held that Panola failed to exhaust its administrative remedies. The general rule in this circuit is that a challenge to agency action in the courts must occur subsequent to the pursuit of administrative remedies. *Deltona Corp. v. Alexander*, 682 F.2d 888, 893 (11th Cir. 1982); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1034 (5th Cir. Unit B 1982); *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir.1982).

■ As with many broad doctrines of judicial function, the exhaustion doctrine has exceptions. Courts will not require exhaustion when the administrative remedy is inadequate because it does not exist, or would not provide relief commensurate with the claim, or would unreasonably delay the action and thereby create a serious risk of irreparable injury. *Walker v. Southern Railway*, 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); *Patsy v. Florida International University*, 634 F.2d 900, 903 (5th Cir.1981), *rev'd on other grounds*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Rhodes v. United States*, 574 F.2d at 1181. Nor will exhaustion be required if the claim clearly will be denied, or where administrative action will not resolve the merits of the claim, as in a constitutional attack on the administrative scheme. *Public Utilities Commission v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); *Patsy*, 634 F.2d at 904; *Fuentes v. Roher*, 519 F.2d 379 (2d Cir. 1975); *Deltona Corp.*, 682 F.2d at 893. Further, exhaustion is not a jurisdictional doctrine, but one subject to the discretion

of the trial court. *NLRB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 419, 426 n. 8, 88 S.Ct. 1717, 1719, 1723 n. 8, 20 L.Ed.2d 706 (1968); *Haitian Refugee Center v. Smith*, 676 F.2d at 1034.

In this case, FmHA's administrative procedures are inadequate for handling complaints of discrimination in its own operations. The procedures delineated at 7 C.F.R. § 15.1–15.143 (1984) are directed at reviewing claims of discrimination by a member of a suspect class who has been "excluded from participation in, [been] denied the benefits of, or [been] otherwise subjected to discrimination under any program or activity of an *applicant or recipient receiving Federal financial assistance from the Department of Agriculture or any Agency thereof.*" 7 C.F.R. § 15.1(a) (1984) (emphasis added). Panola's constitutional and statutory claims of discrimination are directed at FmHA conduct, and not that of any "applicant or recipient" receiving federal funds. These procedures are, therefore, not promulgated to address the kind of discrimination about which Panola complains. Therefore, no administrative procedure is available to Panola. Where absence of an administrative procedure di-rected at the complainant's claims exists, no exhaustion can be required. *See Cannon v. University of Chicago*, 441 U.S. 677, 706 n. 41, 99 S.Ct. 1946, 1962 n. 41, 60 L.Ed.2d 560 (1979).[5] The usual policies for requiring exhaustion, therefore, have no relevance where the administrative procedure is in itself either irrelevant to the issues raised or otherwise unable to address the issues.

Likewise, the FmHA administrative review procedures are inadequate because Panola makes a constitutional attack on FmHA's statutory scheme. *Public Utilities Corp. v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). *See McGowan v. Marshall*, 604 F.2d 885, 892 (5th Cir.1979) (agency has no power to declare unconstitutional the statutory and regulatory scheme it is authorized to administer). *See also Oestereich v. Selective Service Board*, 393 U.S. 233, 242, 89 S.Ct. 414, 419, 21 L.Ed.2d 402 (1968). In *Oestereich*, a divinity student, given exemption from induction into military service, was deemed to be "delinquent" causing him to be eligible for induction by the Selective Service Board. The Supreme Court held that judicial review need not wait until completion of the administrative review of

---

5. In addressing the question whether Title IX provides for a private remedy without use of administrative remedies, the Supreme Court declared that Congress "certainly envisions private enforcement suits apart from the administrative procedures that Title VI, like Title IX expressly creates. *Cannon*, 441 U.S. at 706 n. 41, 99 S.Ct. at 1962 n. 41. In holding that a private remedy exists under Title IX the Court looked to the ability of the agency under its procedures to fully address the issues raised by the complainant. The Court reasoned that a private remedy has never been withheld

> where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute.... As the Government itself points out in this case, *Title IX not only does not provide such a mechanism*, but the complaint procedure adopted by HEW does not allow the complainant to participate in the investigation or subsequent enforcement proceedings. Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the

complainant.... Furthermore, the agency may simply decide not to investigate—a decision that often will be based on a lack of enforcement resources, rather than on any conclusion on the merits of the complaint.... In that case, if no private remedy exists, the complainant is relegated to a suit under the Administrative Procedure Act to compel the agency to investigate and cut off funds. *E.g., Adams v. Richardson*, 156 US App DC 267, 480 F2d 1159 (1973). But surely this alternative is far more disruptive of HEW's efforts efficiently to allocate its enforcement resources under Title IX than a private suit against the recipient of federal aid could ever be.

> For these same reasons, we are not persuaded that individual suits are inappropriate in advance of exhaustion of administrative remedies. Because the individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time, it makes little sense to require exhaustion. See 3 K. Davis, Administrative Law Treatise § 20.01, p 57 (1958).

*Cannon*, 441 U.S. at 706 n. 41, 99 S.Ct. at 1963 n. 41 (citations omitted) (emphasis added).

the validity of the delinquency classification. Finding no requirement of exhaustion, among other reasons, the Court found that

> a challenge to the validity of the administrative procedure itself not only renders irrelevant the presumption of regularity, but also presents an issue beyond the competence of the Selective Service Boards to hear and determine. Adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies. See Public Utilities Comm'n v. United States, 355 U.S. 534, 539, 78 S.Ct. 446 [450], 2 L.Ed.2d 470, 475 (1958); Engineers Public Service Co. v. SEC, 78 U.S.App.D.C. 199, 215–216, 138 F.2d 936, 952–953 (1943), dismissed as moot, 332 U.S. 788, 68 S.Ct. 96, 92 L.Ed. 370 [ (1947) ]. The Boards have no power to promulgate regulations, and are not expressly delegated any authority to pass on the validity of regulations or statutes.

Oestereich, 393 U.S. at 242, 89 S.Ct. at 419 (footnotes omitted) (emphasis added). The FmHA administrative procedures do not delegate authority to FmHA to determine the constitutionality of its own statutory and regulatory scheme regarding eligibility for and distribution of loan funds. Accordingly, we hold that the district court abused its discretion in imposing an exhaustion requirement in this case.

### III. Summary Judgment

Another major issue raised by this appeal is whether the granting of summary judgment on the record compiled as of December 6, 1983, was appropriate. On review of the record and the relevant law, we conclude that the district court abused its discretion in granting summary judgment because (1) the curtailment of all discovery except as related to the question of the availability of funds was error, and prejudiced Panola's ability to show a genuine issue of fact; and (2) FmHA did not properly object to answering the interrogatories.

On October 4, 1983, Panola propounded its first interrogatories and request for production, inspection, and copying of doc-

uments. On November 4, 1983, appellees moved for a protective order under Fed.R. Civ.P. 26(c) objecting to answering the interrogatories and request for production of documents. On that same date, appellees moved for judgment on the pleadings or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 12(c) and 56(b). Less than two weeks later, the district court ordered that for the purposes of deciding the summary judgment motion, it would only consider materials submitted through December 6, 1983. On December 1, 1983, the magistrate suspended all discovery pending the district court's determination of the summary judgment motion except that discovery related to the availability of rental funds.

Panola contends that appellees' objections were insufficient, and considering the policy against granting summary judgment where motive and intent are significant issues, the curtailing of discovery was error.

Appellees argue that further discovery is not necessary because the only two issues of genuine material fact have been resolved against Panola. Those issues are: (1) whether rental funds are available for Panola's project and (2) whether FmHA's review properly determined that the Wendy Hill site did not satisfy the criteria of 42 C.F.R. § 1944.215(q). Further, appellees invoke the rule that a magistrate has broad discretion to stay discovery until the district court rules on a pending dispositive motion, such as that for summary judgment.

#### A. Sufficiency of FmHA's Objection to Panola's Discovery

The first question is whether appellees made proper objection in responding to the request for production of documents and interrogatories. If appellees did not make a proper request, then the magistrate's granting of the motion for protective order is an abuse of discretion.

Federal Rule of Civil Procedure 26 authorizes a court to limit discovery where such discovery is cumulative or duplicative, the party seeking discovery has had ample op-

portunity to obtain that information, and the discovery is "unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." That rule further provides that the court may act either on its own initiative or after a party has made a motion for a protective order. Here, appellees moved for a protective order, noting its objections to responding to Panola's discovery requests. To be adequate, objections which serve as the basis of a motion for protective order under Fed.R.Civ.P. 26 should be "plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981). *See Josephs v. Harris Corp.*, 677 F.2d 985 (3d Cir.1982) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980)) ("party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive....' ").

Further, Rule 26 provides that the proper scope of discovery is not limited to information admissible at trial, but can also include information "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The subsidiary question, therefore, is whether appellees' motion for a protective order contained sufficiently specific objections.

■ Appellees' objections included in the motion for protective order do not fall within the Fed.R.Civ.P. 26(b) factors relevant to the court's exercise of its discretion to limit discovery.[6] Appellees complain that Panola's requests for production of documents and interrogatories are unnecessary, too long, too broad, require too much

time, are expensive to complete, are irrelevant, are improperly timed, and entail unreasonable geographic compliance. No mention of the Rule 26(b) factors is made in sufficient specificity to allow the magistrate and the district court, absent an abuse of discretion, to grant the motion for a protective order. The recitation of expense and burdensomeness are merely conclusory.

Appellees cite as authority for the validity of its objections, however, the former Fifth Circuit's decision in *Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588 (5th Cir.1978). In *Marshall*, the Secretary of Labor brought an age discrimination suit against Westinghouse seeking injunctive relief and reinstatement of one former employee. Finding that interrogatories which "encompassed some 7,500 employees in 32 districts and 3 manufacturing plants" were too burdensome, the court noted that

> this Circuit has recently said that in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit. *EEOC v. Packard Electric Division, General Motors Corp.*, 569 F.2d 315 (5 Cir.1978). To move beyond that focus, the plaintiff and the EEOC must show a more particularized need and relevance.

*Marshall*, 576 F.2d at 592.

The wisdom of *Marshall* does not bring comfort to appellees in this case. First, appellees do not specify the relevance of *Marshall*. Second, while the former Fifth Circuit had already determined that the proper scope of discovery in an individual discrimination case was the work unit, no such determination has been made in this type of case, involving the allegation that a federal agency has discriminated on the

---

**6.** In its memorandum in support of the motion for protective order, appellees identify six objections which it believes justifies its request for the issuance of a protective order: (1) allowing discovery to continue would be *unnecessary* since the district court is considering a dispositive motion, that of summary judgment; (2) the discovery requests are "extremely lengthy, detailed, and virtually unrestrained in scope"; (3) response would require "considerable time and expense"; (4) the discovery is irrelevant because appellees are entitled to judgment as a matter of law; (5) the request for production of documents is improper because it asks for response on November 4, 1983, before appellees had thirty days to respond to the request as required by Fed.R.Civ.P. 34; (6) the request for production of documents specifies an unreasonable location (Tuscaloosa, Alabama, not where the documents are located).

basis of race in processing loan applications of citizens of a state. It is evident, nonetheless, that since Panola claims that FmHA has been substantially derelict in its implementation of the objectives of the National Housing Act inside the state of Alabama, interrogatories and other discovery requests relevant to showing a pattern or practice of FmHA as to the entire state is properly within the scope of discovery.

Third, the interrogatories propounded deal generally with the availability of rent subsidy funds, the handling of Panola's preapplication, and the lending and application processing policies of FmHA in the state of Alabama. All of these issues are relevant to Panola's discrimination and due process claims. *See, e.g., Marshall v. Westinghouse Electric Corp.*, 576 F.2d 588 (5th Cir.1978) ("a plaintiff who must shoulder the burden of proving that the reasons given for his discharge are pretextual should not normally be denied the information necessary to establish that claim.") As a result, the magistrate's granting of the motion for protective order and its adoption by the district court were abuses of discretion.

## B. Curtailment of Discovery to Issue of Availability of Rental Subsidy Funds

The magistrate's curtailment of discovery except as to the availability of rental funds was also an abuse of discretion. Appellees are correct in declaring that a magistrate has broad discretion to stay discovery pending decision on a dispositive motion. *Scroggins v. Air Cargo, Inc.*, 534 F.2d 1124, 1133 (5th Cir.1976). *See, e.g., Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1304 n. 13 (5th Cir.1983) (curtailment of discovery is proper where the case can be decided on motions and the issues are the statutes of limitations and release). *Scroggins*, however, explains that an abuse of discretion occurs in staying general discovery "if plaintiff [has] been denied discovery which relates to the summary judgment motion." *Scroggins*, 534 F.2d at 1133. Here, appellees moved for judgment on the pleadings or summary judgment as to all issues in the case. The magistrate stayed discovery as to all issues except that of the availability of rental funds. Under *Scroggins*, such a limitation of discovery would not be an abuse of discretion where the availability of rental funds was the only issue relevant to summary judgment. Asking for summary judgment as to all issues, means all issues in the complaint are therefore relevant to summary judgment. In *Scroggins*, for example, where the issues for summary judgment only included immunity and the nature of the CAB's regulation for an air carrier, the plaintiffs in that case failed to persuade the court that more than those issues were involved in summary judgment. Here, it is beyond doubt, even assuming that funds were indeed not available, that other issues were involved. For example, assuming the unavailability of funds, Panola also alleges a due process violation in the processing of its preapplication and in the interpretation of applicable regulations. Insufficiency of funds to make a loan does not preclude the ranking of an eligible preapplication for a receipt of later funds, or the eligibility of that preapplication for any unexpected allocation that Congress may make. Further, motive and intent are important to Panola's claims of discrimination; it must be afforded a sufficient opportunity to develop a factual base. *See Hayden v. First National Bank*, 595 F.2d 994 (5th Cir.1979).

The magistrate and the district court understood Panola's cause of action as seeking redress from the decision not to provide funds to the project. This view is not totally without support; some portions of the prayer for relief and the complaint ask the court to require FmHA to provide funding. A view of the complaint and the cause of action as a whole, however, reveals that the basic objective of Panola's action is to seek a constitutionally fair evaluation of its right to receive a benefit under the National Housing Act. Since we hold that the action is not barred, and it was an abuse of discretion to curtail discovery, except as to the issue of the availability of rental funds, we do not address other issues in the case.

## CONCLUSION

We hold, therefore, that (1) sovereign immunity is not a bar to judicial review of this case; (2) the doctrine of exhaustion of administrative remedies does not apply; (3) FmHA failed in its obligation to specify the objections to Panola's discovery requests; and (4) curtailment of discovery except as to the issue of availability of rental funds was error. Accordingly, we remand for proceedings consistent with this opinion.

REMANDED.