**McLEOD, ALEXANDER, POWEL & APFFEL, P.C., Plaintiff–Appellee,**

v.

**Fred H. QUARLES, Defendant–Appellant.**

No. 89–2522.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1990.

Gerson D. Bloom, Galveston, Tex., for defendant-appellant.

Kenneth J. Bower, Ervin A. Apffel, Jr., McLeod, Alexander, Powel & Apffel, Otto Hewitt, Kenneth C. Baker, Galveston, Tex., for plaintiff-appellee.

Before GEE, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendant Fred Quarles appeals from a default judgment entered for his failure to comply with discovery requests. Quarles claims that since he was not under an order to compel, sanctions were improper; moreover, he asserts that the district court erred in finding his conduct wilful and in bad faith. Finally, Quarles argues the trial court erred in awarding plaintiff McLeod, Alexander, Powel & Apffel, P.C. ("the law firm") costs and attorneys' fees.

I.

The law firm sued Quarles to collect legal fees totalling $11,797, representing charges for services provided to Quarles and his company, Commonwealth Airlines, in three transactions prior to the instant lawsuit. Quarles removed the case to federal court based upon diversity of citizenship.[1]

Quarles received the law firm's first discovery requests on February 1, 1988. He responded with cursory objections and produced no documents. He also filed a motion for protection from discovery and for sanctions against the law firm for propounding discovery to him. On April 29, 1988, Quarles's motions were denied by a

---

1. Mercifully, Congress subsequently has increased to $50,000 the jurisdictional amount for diversity actions. See Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, Title II, § 201(a), 102 Stat. 4642 (1988), amending 28 U.S.C. § 1332. That amendment does not affect the instant case, however.

magistrate. In August 1988, the magistrate issued a docket control order requiring completion of discovery by October 24, 1988, and the law firm reiterated its discovery requests to Quarles. Quarles responded to the law firm's second set of discovery requests by restating the prior summary objections in an even more cursory form and by producing nothing.

On March 7, 1989, the law firm moved for sanctions against Quarles for discovery abuses or alternatively to compel discovery. Quarles argued in response that the court had no authority to deal with discovery because its docket control order had expired. On April 3, 1989, the magistrate found Quarles's discovery abuses wilful and in bad faith and recommended that his answers be stricken and default judgment for the law firm be entered. On April 26, 1989, the district court adopted the magistrate's recommendation.

On Friday, May 5, 1989, the law firm filed its application for costs, including attorneys' fees. On Monday, May 8, costs were taxed against Quarles by the clerk, and on May 9, Quarles objected to the $44,160 in attorneys' fees taxed against him. On May 18, 1989, Quarles appealed the district court judgment and the taxing of costs. There was no review of the taxing of costs in the district court.

## II.

The magistrate's recommendation, which was adopted by the district court, stated that Quarles's responses to the law firm's requests for admissions and to the law firm's production requests were inadequate and improper under the Federal Rules of Civil Procedure. In order to demonstrate that the district court did not abuse its discretion, it is sufficient to review only Quarles's responses to the law firm's production requests, as these responses constituted Quarles's most egregious failures to comply with discovery rules.

The law firm requested from Quarles documents such as records relating to Quarles's relationship with Commonwealth Airlines, records relating to the case on which the law firm had done legal work for Commonwealth and Quarles and from which arose the billing dispute, documents related to previous lawsuits against attorneys, and cancelled checks and income tax returns from recent years. Over the thirteen-month period, Quarles produced no documents, and his objection to each request was virtually identical. All of the requests were supposedly "overbroad" and "propounded with the intent to harass, delay, and abuse." Most also were "irrelevant," and some were "privileged" as well. Defendant's *most* complete explanation of any of his individual objections was, "Objected to. Overbroad; irrelevant; privileged. Propounded with the intent to harass, delay and abuse." There was also a general objection of geographical inconvenience to all of the requests. In response to the law firm's reiterated requests for production, Quarles presented seven *identical* objections, each stating only, "Objection. Request is overly-broad, not specific, and creates a hardship on the producing party."

### A.

 Quarles now claims that the district court erred in not finding the law firm's requests irrelevant. We find, though, that most of its requests were relevant, as they sought information that was either admissible or "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b). For example, the production request for materials related to prior lawsuits against attorneys sought evidence *related to a habit or routine practice*, which is "relevant to prove that the conduct on a particular occasion was in conformity with the habit or routine practice." Fed.R.Evid. 406; *see Reyes v. Missouri Pac. R.R.*, 589 F.2d 791, 794 (5th Cir.1979). Since one of Quarles's primary defenses was that only his corporation, Commonwealth Airlines, was liable for the debt, production requests relating to defendant's relationship with Commonwealth Airlines were also relevant. In fact, in Quarles's specific responses to these requests, the word "irrelevant" was not present. Requested documents such as tax returns and cancelled checks would be rele-

vant to show how much Quarles and Commonwealth Airlines paid on each other's bills and how closely their financial affairs were intertwined. Indeed, one of the law firm's assertions is that Commonwealth Airlines, as a company owned 100% by Quarles, was an alter ego of Quarles.

Moreover, even if some of the law firm's requests for production were irrelevant, Quarles must have a valid objection to each one in order to escape the production requirement. *See Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir.1982). The court in *Josephs* held that the "party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Id.* at 992 (quoting *Roesberg v. Johns–Manville Corp.*, 85 F.R.D. 292, 296–97 (E.D.Pa.1980)). These objections (overly broad, burdensome, and oppressive) were basically the same as those made by Quarles in the instant case. In *Josephs* it was held that to say an interrogatory was "overly broad, burdensome, oppressive and irrelevant" was "not adequate to voice a successful objection to an interrogatory." *Id.* We see no reason to distinguish the standards governing responses to interrogatories from those that govern responses to production requests.

In *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir.1985), one party objected to production requests and interrogatories by stating that the discovery requests were "unnecessary, too long, too broad, require too much time, are expensive to complete, are irrelevant, are improperly timed, and entail unreasonable geographic compliance." With regard to those objections, the court held that "[n]o mention of the Rule 26(b) factors is made in sufficient specificity to allow the magistrate and the district court, absent an abuse of discretion, to grant the motion for a protective order. The recitation of expense and burdensomeness are merely conclusory." *Id.* Objections in the instant case were even less specific than those in *Panola.* Therefore, where that court held that it would be an abuse of discretion to *grant* a protective order based upon such objections, the magistrate's *denial* of a

protective order in the instant case was certainly not an abuse of discretion. Hence, the district court did not abuse its discretion in finding the law firm's requests for discovery relevant, Quarles's objections to discovery insufficient, and Quarles's request for a protective order unmeritorious.

### B.

Quarles next argues that sanctions cannot be imposed upon him because he did not violate any order of the court. Quarles claims that the law firm had a duty first to request an order to compel and that the court could not impose sanctions until it issued such an order and Quarles subsequently failed to comply with it.

First, an order is not always a prerequisite to the imposition of sanctions. Courts have held that rule 37(b) sanctions can be imposed even without an existing order to compel. The Seventh Circuit explained,

> Although a motion to compel usually precedes the imposition of Rule 37(b) sanctions, a formal motion is not always necessary. In general, where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel the discovery from the opposing party.

*Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir.1984). *See also Properties Int'l Ltd. v. Turner*, 706 F.2d 308, 310 (11th Cir.1983).

Second, although no order to compel had been granted here, Quarles did violate an order of the court. On August 3, 1988, the court had issued a docket control order requiring discovery completed by October 24, 1988. The order expressly warned, "Failure to comply with this order will result in sanctions pursuant to Fed.R.Civ.P. 16(f)." That rule specifically states that if a party fails to obey a schedule or pre-trial order, the judge may sanction the parties pursuant to rule 37(b); rule 37 sanctions include the entry of default judgment.

## C.

■ In *Sciambra v. Graham News Co.*, 841 F.2d 651, 655 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 143, 102 L.Ed.2d 115 (1988), we stated, "A district court has discretion to impose sanctions under Rule 37. Judgment by default, although a harsh sanction, is one contemplated by the Rule." In *Emerick v. Fenick Indus., Inc.,* 539 F.2d 1379, 1381 (5th Cir.1976), we noted,

When, as here, a defendant's pleadings are stricken, an appellate court's review should be particularly scrupulous lest the district court too lightly resort to this extreme sanction, amounting to judgment against the defendant without an opportunity to be heard on the merits.

Nevertheless, when a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, the district court's choice of the extreme sanction is not an abuse of discretion. It is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction. It is our responsibility solely to decide whether the district court could, in its discretion, have determined the appellant's conduct to be so flagrant as to justify striking its pleadings.

Quarles claims that the district court's finding of wilfulness and bad faith is clearly erroneous. Had Quarles responded improperly only to the law firm's *first* set of discovery requests, this might be a reasonable argument. However, after Quarles's motion for a protective order was denied by the magistrate and discovery requests were made anew with the magistrate's explicit order that compliance with them must be made by October 1988, and defendant had not complied as of March 1989, the district court was easily within its discretion in concluding that defendant's actions were wilful and in bad faith.

Quarles should not be able to avoid discovery for over a year based upon the same summary objections that the magistrate had specifically found were not sufficient—summary objections so vacuous that they had led the magistrate to order specific compliance. Quarles, though, paid no more attention to the court order than he did to the law firm's discovery requests. Therefore, the district court did not abuse its discretion in striking defendant's pleadings and entering default judgment in favor of the plaintiffs.

We add that the tactics of Quarles and his counsel[2] are an all-too-common example of the sort of "Rambo tactics" that have brought disrepute upon attorneys and the legal system. In a recent case we observed,

Regardless of [plaintiff's] intentions, or inattention, which led to the flouting of discovery deadlines, such delays are a particularly abhorrent feature of today's trial practice. They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution. Adherence to reasonable deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here. The court did not abuse its discretion in striking [plaintiff's] untimely witness designation and precluding Geiserman's expert testimony.

*Geiserman v. MacDonald,* 893 F.2d 787, 792 (5th Cir.1990) (footnote omitted).

The same condemnation of abusive discovery tactics should apply here. Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests. On November 7, 1989, the Supreme Court of Texas and the Texas Court of Criminal Appeals promulgated and adopted "The Texas Lawyers' Creed—A Mandate for Professionalism," *reprinted in* 52 Tex.Bar.J. 1304 (1989), setting forth standards for the conduct of

---

**2.** In fairness to Quarles's attorney, we note that Quarles proceeded *pro se* until April 29, 1988. Hence, Quarles's first set of unresponsive answers to discovery was filed *pro se* and cannot accurately be charged to the lawyer.

attorneys in the state courts of Texas. Part III.17 thereof reads as follows:

> I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instruction to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear.

While this court has not yet formally adopted a similar creed, we commend the efforts of Texas's highest courts to instill a greater sense of professionalism among attorneys.[3] Certainly, the spirit of the Federal Rules of Civil Procedure is served by adherence to similar principles of professionalism and civility. We easily conclude that the conduct of Quarles and his counsel in the instant case did not satisfy that standard and that the sanction of dismissal was appropriate.

We note in particular that this defendant *first*, by producing nothing for over thirteen months in defiance of the magistrate's standing order, caused the magistrate's docket control deadline for discovery completion to pass utterly unfulfilled, and *then* had the effrontery to argue that the court was now without jurisdiction to sanction him as its docket order had expired. We can ill afford to permit litigants to waste scarce court resources with disingenuous or frivolous arguments and motions asserted purely to hinder and delay the efficient operation of justice.

### III.

### A.

█ Since this is a diversity case, Texas law governs the award of attorneys' fees. As we stated in *Shelak v. White Motor Co.*, 636 F.2d 1069, 1072 (5th Cir. Unit A Feb. 1981),

> Our cases have made it clear that in an ordinary diversity case, state rather than federal law governs the issue of the awarding of attorney's fees. Thus, the direct authority granted district courts by Fed.R.Civ.P. 54(d) to award attorney's fees must be exercised within the bounds of applicable state law.... [Citations omitted.]

In fact, in a recent diversity action in which a Texas law firm successfully recovered fees owed to it, we upheld, on the basis of Texas state law (Tex.Civ.Prac. & Rem.Code Ann. §§ 38.001, 38.002 (Vernon 1986)), an award to the plaintiff law firm of fees incurred in bringing the action to recover debts owed to it (which were, of course, also fees for legal services). *See Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398 (5th Cir.1989).

Quarles claims that the law firm cannot recover under section 38.001[4] because an

---

**3.** In their joint order adopting the creed, the two courts noted the following:

> The Supreme Court of Texas and the Court of Criminal Appeals are committed to eliminating a practice in our State by a minority of lawyers of abusive tactics which have surfaced in many parts of our country. We believe such tactics are a disservice to our citizens, harmful to clients, and demeaning to our profession.
>
> The abusive tactics range from lack of civility to outright hostility and obstructionism. Such behavior does not serve justice but tends to delay and often deny justice. The lawyers who use abusive tactics instead of being part of the solution have become part of the problem.
>
> The desire for respect and confidence by lawyers from the public should provide the members of our profession with the necessary incentive to attain the highest degree of ethical and professional conduct. These rules are primarily aspirational. Compliance with the rules depends primarily upon understanding and voluntary compliance, secondarily upon re-enforcement by peer pressure and public opinion, and finally when necessary by enforcement by the courts through their inherent powers and rules already in existence.
>
> 52 Tex.Bar.J. at 1303.

**4.** Section 38.001 reads as follows:

> A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:
> (1) rendered services;
> (2) performed labor;
> (3) furnished material;
> (4) freight or express overcharges;
> (5) lost or damaged freight or express;
> (6) killed or injured stock;

attorney representing his own firm does not constitute representation by counsel. However, we have answered this question directly and have held that an attorney representing his own law firm did satisfy the requirements of section 38.001. *See Campbell, Athey & Zukowski,* 863 F.2d at 400.

Quarles also claims that the law firm seeks recovery on a sworn account under section 38.001(7) and that such recovery is not available because the law firm did not present the proper affidavit necessary for recovery under a sworn account. We need not inquire as to whether the affidavit in the record is somehow deficient so as not to satisfy Tex.R.Civ.P. 185, since we hold that the law firm need not seek recovery of attorneys' fees only under section 38.-001(7), as section 38.001(1) allows recovery of attorneys' fees on a claim for "rendered services," section 38.001(2) on a claim for "performed labor," and section 38.001(8) on a claim for "oral or written contract." [5] *See Youngblood v. Wilson & Cureton,* 321 S.W.2d 887, 888 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.) (holding that an attorney's services were "personal services rendered" or "labor done" under the predecessor statute to section 38.001).

### B.

As stated earlier, the law firm's application for costs was made May 5, 1989; costs were taxed to Quarles May 8, 1989; and Quarles filed his objection to the taxing of costs on May 9, 1989. Quarles argues that the district court abused its discretion in taxing costs before considering defendant's timely-filed objection. He maintains that the trial court must wait to tax costs until either the party to be taxed responds or the five day time limit for objection to taxing

(7) a sworn account; or
(8) an oral or written contract.

of costs under the district's Local Rule 4(b) has expired.

The law firm, on the other hand, asserts that Quarles made no timely motion for review of the assessment of costs by the district court and hence cannot challenge costs on appeal. The law firm argues that under Fed.R.Civ.P. 54(d), failure to make the motion for review within five days of the taxing of costs will waive a party's ability to appeal the taxing of costs.

■ We recognize that district courts have considerable latitude in applying their own rules. *See Phillips v. Insurance Co. of N. Am.,* 633 F.2d 1165, 1167 n. 5 (5th Cir. Unit B Jan. 1981). Here, the local rules say neither that the court must wait, as Quarles claims, nor that the court must consider objections before taxing costs. We express no opinion here as to whether the district court violated its own local rules. We simply observe that either (i) Quarles is right and is entitled to have his timely-filed objection heard by the district court before it taxes costs, *or* (ii) the court's May 8 order taxing costs was valid, and thus Quarles's May 9 objection may be deemed a motion for review under rule 54(d).[6]

Under rule 54(d), the district court reviews the taxing of costs at its discretion; on appeal, we address only legal issues regarding costs and the proper bounds of the district court's discretion. As we have explained we hold that the law firm is entitled to attorneys' fees. However, we also conclude that where the court taxes $44,160 in attorneys' fees in an action to recover less than $12,000, it should give the party to be taxed an opportunity to be heard on the issue. Hence, we remand to the district court so that it may specifically consider evidence as to the proper *amount*

---

**5.** We also note that Texas law allows recovery of attorneys' fees in cases where, as here, discovery abuses were central to the court's resolution of the case. In *Fiduciary Mortgage Co. v. City Nat'l Bank of Irving,* 762 S.W.2d 196 (Tex. App.—Dallas 1988, writ denied), the court awarded attorneys' fees to plaintiff in a breach-

of-contract action in which defendant's answers were stricken for discovery abuses.

**6.** As the five-day period for requesting review under rule 54(d) is not jurisdictional, *see Baum v. United States,* 432 F.2d 85, 86 (5th Cir.1970); *United States v. Kolesar,* 313 F.2d 835, 837 n. 1 (5th Cir.1963), we may consider the costs issue on appeal even if Quarles's objection was not a proper rule 54(d) motion.

of reasonable attorneys' fees. The district court should explain its method of arriving at whatever amount is determined; we express absolutely no view as to whether the amount of $44,160 is appropriate, excessive, or insufficient.[7]

AFFIRMED in part, VACATED in part, and REMANDED.

---

7. Included within the district court's calculation of attorneys' fees should be the law firm's reasonable fees for time spent on this appeal and on remand in the ascertainment of fees. For this purpose, the law firm shall be deemed the prevailing party on appeal.