**Thomas Kenneth ABRAHAM, an individual d/b/a Paddle Tramps Mfg. Co., Plaintiff,**

v.

**ALPHA CHI OMEGA, an unincorporated association, et al., Defendants.**

No. 3:08–cv–00570–F.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 14, 2010.

Elizann Carroll, Molly B. Richard, Richard Law Group Inc., Jeffrey S. Levinger, Hankinson Levinger LLP, Dallas, TX, for Plaintiff.

D. Ronald Reneker, Munsch Hardt Kopf & Harr PC, Dallas, TX, Amy S. Cahill, Jack A. Wheat, Jennifer L. Kovalcik, Stites & Harbison PLLC, Louisville, KY, Haley M. Dicker-

son, Stites & Harbison PLLC, Lexington, KY, for Defendants.

### ORDER ON PLAINTIFF'S MOTION TO COMPEL

ROYAL FURGESON, Senior District Judge.

Before the Court is Plaintiff's Motion to Compel Interrogatory Answers (Docket No. 45), filed November 1, 2010. After considering the motions and pleadings of both parties, as well as applicable law, the Court is of the opinion that Plaintiff's Motion should be GRANTED IN PART and DENIED IN PART.

### I. Background

Plaintiff Thomas Kenneth Abraham started Paddle Tramps Manufacturing Company in 1961. Paddle Tramps manufactures and wholesales decorative wood products, and it has been selling its products to Greek organizations since 1967. In the late 1990s, many Greek organizations began working with Affinity Marketing Consultants, Inc. (AMC) to start a licensing program applicable to manufacturers that incorporated certain Greek marks in their products. Several of the Defendants in this case are clients of AMC. In 2000, AMC sent a letter to Paddle Tramps on behalf of its clients demanding that Paddle Tramps cease and desist using its Greek symbols in its products.

In 2008, several Greek organizations sued Paddle Tramps in the United States District Court for the Southern District of Florida. The ease was dismissed without prejudice. Plaintiff, doing business as Paddle Tramps, then brought this declaratory judgment action against Defendant Greek Organizations. Defendants filed counterclaims of trademark infringement and related causes of action. Plaintiff has pleaded the affirmative defenses of laches, acquiescence, and abandonment.

The present motion to compel is the latest in a series of discovery disputes between the parties. Previously, Plaintiff sought discovery related to Defendants' knowledge of Paddle Tramps, purchases from Paddle Tramps

by any level of the Defendant Greek Organizations (e.g., the national, chapter, or individual member levels), and communications with Paddle Tramps regarding trademarks or licensing from 1961 to present. After Defendants objected on various grounds and Plaintiff moved to compel, the Court held that Plaintiff's requests were relevant but that producing documents and information spanning almost 50 years would be unduly burdensome. (See Docket No. 24.) Accordingly, the Court only compelled disclosure of this information for the time period after April 3, 2003, which was the five-year period preceding the filing of this lawsuit.

The present motion seeks to compel answers to interrogatories regarding employees involved in Defendants' licensing programs and contracts with AMC. For each Defendant, Plaintiff served the following interrogatories:

*INTERROGATORY NO. 1:* Identify current employees who have responsibilities for or are involved in your licensing program (other than for official jewelry) and for each, state their job title or position and the dates of their employment.

*INTERROGATORY NO. 2:* Identify all persons with personal knowledge of when and/or why you first contracted with Affinity Marketing Consultants ("AMC") and for each such person, provide:

 (a) their position at the time the contract was signed and their current position or if they no longer are employed by _____ or on the board of _____, what their position was at the time of the AMC contract; and

 (b) a short statement describing their knowledge (i.e. attended presentation by Dan Shaver, signed contract).

*INTERROGATORY NO. 3:* Identify former employees who had responsibilities for or were involved in your licensing programs (other than for official jewelry) and for each, state their job title or positions and dates of employment.[1]

---

1. Some Defendants also receiving an interrogatory asking them to "[i]dentify any current employ-

ee who has personal knowledge of your involvement with Greek Properties." Although Plaintiff

As discussed further below, Defendants submitted several general objections as well as objections to specific interrogatories. Defendants also objected to the extent that the interrogatories sought information predating April 3, 2003, the date that the Court used to limit previous discovery requests. The Court considers Plaintiff's motion in light of these objections.[2]

## II. Standard

A party may move to compel the disclosure of any materials or discovery response requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R.Civ.P. 37. Materials and information are discoverable if they are "relevant to any party's claim or defense," and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

 The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd., v. Knight,* 241 F.R.D. 259, 263 (W.D.Tex.2006) (Nowak, Mag. J.). Once the moving party establishes that the request is within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *See Spiegelberg Mfg., Inc. v. Hancock,* No. 3–07–CV–01314–G, 2007 WL 4258246, at *1 (N.D.Tex. Dec. 3, 2007) (Kaplan, Mag. J.). In a nonconclusory fashion, that party must show specifically how each document request is overly broad, burdensome, or oppressive. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990).

[T]he court must limit the frequency or extent of discovery ... if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2).

## III. Discussion

Based on the parties' briefing, there appears to be three general areas of dispute: (1) a dispute about the relevancy of Plaintiff's requests; (2) a dispute concerning Interrogatory No. 2, which seeks information about "all persons" with knowledge of "why" each Defendant first contracted with AMC, and (3) a dispute regarding the remaining interrogatories, which essentially concern current and former employees who had responsibility for each Defendant's licensing program. The Court addresses each of these areas in turn.

### A. Relevancy of Plaintiff's Interrogatories

 Plaintiff's interrogatories are aimed at identifying individuals that have knowledge of each Defendant's internal licensing programs and their first contracts with AMC. Plaintiff claims that these interrogatories will shed light on Defendants' attempts to protect their marks, and thus are relevant to its defense of laches. Because the defense of laches concerns a delay in asserting one's rights, *see, e.g., Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.,* 550 F.3d 465, 489–90 (5th Cir. 2008), Plaintiff's attempts to discern those individuals responsible for Defendants' licensing programs and contracts with AMC are relevant under Rule 26. In a previous

---

has generally moved to compel answers to the interrogatories, its briefing does not address any objections to this specific interrogatory or any deficiencies in Defendants' answers to it. Accordingly, the Motion to Compel is DENIED to the extent it concerns this interrogatory.

**2.** Although Defendants raised a variety of objections in their discovery responses, the Court considers only those raised by Defendants in response to this motion.

discover order, the Court similarly held as much regarding Plaintiff's affirmative defenses. (*See* Docket No. 24.)

### B. Interrogatory No. 2 Regarding the First Contracts with AMC

Plaintiff classifies this interrogatory as an attempt to determine those persons with knowledge of "when" and "why" each Greek Organization "first contracted" with AMC. Defendants appear to have answered the "when" inquiry as they have produced the first contract between AMC and each Defendant, and Plaintiff acknowledges that Defendants have done so.[3]

Plaintiff's motion thus focuses on the "why" inquiry and seeks disclosure of all individuals who have some knowledge of why each Defendant first contracted with AMC. Defendants primarily object that this interrogatory is duplicative and cumulative because (1) they have produced each Defendant's first contract with AMC, which contains the signature of the person with the "most knowledge," and (2) deposition testimony from a representative of AMC, Dan Shaver, covers this subject.

Both parties have reasonable arguments. Although Plaintiff fears that the contracts' signatories may not actually be the individuals with the "most knowledge," Defendants have represented that the various signatories are, in fact, the individuals with the most knowledge. But just because an individual is the one with the most knowledge does not necessarily mean that others lack knowledge relevant to the issue. Each Defendant's decision to engage AMC may have involved other people with significant knowledge of the decision, even if those individuals fall short of having as much knowledge as the signatory. Notably, Defendants have not stated that others lack knowledge of the AMC contract decisions. In addition, Plaintiff is correct in noting that Shaver, an AMC representative, may not know all of the individuals with knowledge of each Defendant's decision to engage AMC. Indeed, Shaver

has apparently admitted that he cannot recall everyone who he has dealt with. Nor would Shaver likely have knowledge of each Defendant's *internal* communications regarding its decision to engage AMC. Finally, Defendants claim to have provided "countless documents and extensive testimony as to their efforts to protect their marks pre-AMC," but they have not indicated what that information is or how it is responsive to Plaintiff's interrogatory.

■ Plaintiff's request does not appear to be overly broad or unduly burdensome, and Defendants have not argued otherwise in response to this motion.[4] The request is limited to the time frame surrounding each Defendant's decision to initially contract with AMC, and it is limited to identifying individuals with knowledge of that specific decision. Most importantly, Plaintiff is primarily concerned with answers within "the knowledge of [the Defendants'] current staff and in readily available documents." Pl.'s Mot. to Compel at 9 (Docket No. 9).

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Compel as regards Interrogatory No. 2. Defendants are ORDERED to identify "all persons with personal knowledge of . . . why [they] first contracted with [AMC]" and provide the additional information requested in subparts (a) and (b) of that interrogatory. Defendants need not, however, provide responses outside the scope of "the knowledge of their current staff [or] readily available documents."

### C. Remaining Interrogatories Regarding Former and Current Employees

The remaining interrogatories regard the identity, job title, and dates of employment of former and current employees who "have responsibility for" or "are involved in" each Defendant's licensing program. Defendants objected that the phrase "involved in" is vague and overbroad, noting that the phrase could include countless persons at all levels, including administrative assistants and in-

---

3. Plaintiff has claimed that some signatures on the contracts were illegible, but Defendants' briefing on this motion appears to have remedied this issue.

4. The Defendants' objections on these grounds are found only in their response to the interrogatories.

terns. Accordingly, they limited their responses to those employees "responsible for" the licensing program, which they define as those persons who have been "answerable or accountable" for the licensing program since April 3, 2003. Defendants also objected to disclosing some former employees on the grounds of attorney-client privilege.

■ The Court agrees that identifying all employees "involved in" the licensing program is overbroad and that identifying only those "responsible for" the licensing program sufficiently responds to Plaintiff's request. The Court also notes that unlike Defendants' responses regarding the contracts with AMC—responses that only listed the signatory to the contract—their responses to these interrogatories often identified multiple employees who were concurrently responsible for the licensing program.

The Court disagrees, however, that the responses should have been limited to those responsible for the licensing program since April 3, 2003. When the Court previously used that date as a discovery cutoff, it did so in response to a request for 40 year's worth of purchasing history from all levels of each Defendant Greek Organization (e.g., the national, chapter, and member levels). The Court concluded that such a request would have been unduly burdensome given the expense of gathering information concerning so many individuals over such a long period of time. The current request, however, does not appear to create such a burden because it concerns information within the province of each defendant (i.e., Defendants need not contact their chapters or members to obtain the information). Indeed, Defendants have not argued that gathering this information would be unduly burdensome. The Court thus concludes that Defendants should have identified even those employees who were employed before April 3, 2003.

Importantly, Plaintiff does not seek to discover every individual who has ever been responsible for Defendants' licensing programs. Before filing this motion, Plaintiff informed Defendants that it was "only asking who current people can identify" as having served in that capacity. Again, this is not an unduly burdensome request.

■ Finally, Defendants apparently refused to disclose some former employees "because it is likely that each of them were involved with privileged information about their respective organization's trademark programs, [and thus] any contact would need to go through counsel." In asserting a privilege, a "party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R.Civ.P. 26(b)(5)(A). Defendants' discovery responses fall short of meeting these requirements. They only generally objected "to the extent [the requests] call for the disclosure of information which is subject to the attorney-client privilege." *E.g.*, Pl.'s App. at 37 (Docket No. 37). Their responses to the specific interrogatory concerning former employees does not mention the privilege, and only in subsequent communications with Plaintiffs did Defendants note that the information is "likely" covered by the privilege. Such a blanket assertion, especially one that does not "describe the nature of the [items] not produced or disclosed," is insufficient under Rule 26.[5] And although Defendants did disclose some former employees, it is unclear whether the disclosures are complete or were limited in some way by privilege.

For the foregoing reasons, Plaintiff's Motion to Compel is GRANTED as to Interrogatories Nos. 1 and 3. Defendants are ordered to identify those former and current employees "responsible for" their licensing programs. In complying with this Order, Defendants need only identify those persons within "the knowledge of [the Defendants'] current staff and in readily available documents."

### IV. Conclusion

As mentioned above, this motion to compel is the latest in a series of motions to compel,

---

5. In their responses to the interrogatories, Defendants claimed that providing a privilege log would be unduly burdensome. They have not raised this objection in response to the motion or presented any argument indicating why providing a privilege log would be unduly burdensome.

and the parties seem to be having significant difficulties working through discovery in this case. Without detailing the accusations against each party, it suffices to say that each side has accused the other of engaging in some form of discovery abuse—whether it be refusing to communicate or meet and confer, inadequately answering questions, sending too many e-mails, not sending enough e-mails, or omitting relevant communications in filings with the Court, among other accusations. The Court need not, and does not, assign blame to any party. It does note, however, that the parties acknowledge—both in their pre-motion communications to each other and in their briefing to the Court—that this particular dispute possibly could have been resolved by a "simple phone call." Yet neither side picked up the phone. The Court understands that some discovery disputes will necessarily be resolved in court regardless of the parties' attempts to resolve the disputes on their own, but the Court admonishes the parties to openly, and in good faith, communicate with each other through whichever means are most effective—whether it be letter, e-mail, telephone, or some other means—in resolving any future discovery disputes.

For the foregoing reasons, Plaintiff's Motion to Compel Interrogatory Answers (Docket No. 45) is GRANTED IN PART and DENIED IN PART.

The Motion is DENIED to the extent it regards the interrogatory submitted to some Defendants concerning their involvement with Greek Properties.

The Motion is GRANTED to the extent it concerns Interrogatories Nos. 1, 2, and 3, discussed above. Defendants are ORDERED to answer Interrogatory No. 2 by identifying "all persons with personal knowledge of . . . why [they] first contracted with [AMC]" and providing the additional information requested in subparts (a) and (b) of that interrogatory. Defendants are also ORDERED to answer Interrogatories No. 1 and 3 by identifying those former and current employees "responsible for" their licensing programs. In complying with this Order, Defendants need only provide responses within "the knowledge of [the Defendants']

current staff and in readily available documents."

It is so Ordered.